Joe E. LOONEY, Jr., *et al.* *v.* Bill LOONEY

98-712                                        986 S.W.2d 858

Supreme Court of Arkansas
Opinion delivered March 11, 1999

*Rose Law Firm,* by: *James H. Druff,* for appellants.

*Durrett & Coleman,* by: *Gerald A. Coleman,* for appellee.

ROBERT L. BROWN, Justice. The primary question raised in this appeal is whether an order partitioning land evenly between appellee Bill Looney and appellant heirs of Joe Looney, Sr. (hereinafter "Looney heirs"), and appointing three commissioners to determine whether partition is possible or whether the land should be sold is a final order.[1] The second chancellor considering this issue concluded that it was. We disagree, and we reverse and remand for further proceedings.

On March 3, 1995, Bill Looney filed suit in Crittenden County against Joe Looney, Jr., who is executor of the Estate of Joe Looney, Sr., and prayed to have certain land belonging to him and to the Estate of Joe E. Looney, Sr., partitioned. Eight separate tracts are involved totaling approximately one thousand acres of farm land. In his complaint, Bill Looney alleged that the land was owned in partnership and that Joe Looney, Jr., as executor, had refused to agree to a lease of the land for farming. On October 25, 1995, Chancellor Rice Van Ausdall ordered a judgment of partition pursuant to Ark. Code Ann. § 18-60-412 (1987), and directed that the land be divided equally between Bill Looney, who owned fifty percent of the land, and the five Looney heirs, each of whom owned ten percent of the land. The chancellor stated in his order that it appeared to him that the parties had agreed to these ownership interests. The chancellor also ordered that three commissioners should be appointed to determine whether partition is possible pursuant to Ark. Code Ann. § 18-60-414 (1987).

---

[1] The Looney heirs are Joe Looney, Jr., David Looney, Jill Green, Deborah Wintersteen, and Diann McAuley as Trustee.

On January 5, 1996, two Looney heirs — Diann McAuley, as trustee, and David Looney — filed an amended answer and counterclaim. In their answer, they denied the allegations in Bill Looney's complaint. In their counterclaim, they alleged that the land in question was the sole asset of a partnership formed between Bill Looney and the decedent, Joe Looney, Sr. The two Looney heirs contended that the land should be divided according to the respective partnership interests of Bill Looney and Joe Looney, Sr., based on the capital accounts of those partners rather than split evenly between Bill Looney and the Looney heirs. They called on the chancellor to determine the capital accounts owned by each of the Looney brothers at the time of Joe Looney, Sr.'s death and to partition the land accordingly.

On February 6, 1996, Bill Looney moved to dismiss the counterclaim and asserted that there was no disparity in the two brothers' capital accounts for the partnership (Looney Farms) and that the issues raised in the counterclaim were barred under the doctrines of *res judicata* and collateral estoppel because interests in the land to be partitioned had been admitted. The two Looney heirs responded that a dismissal of the counterclaim would be improper because there had been no adjudication relating to the division and ownership of the farm land in either probate court or chancery court. In a supplemental response to the motion to dismiss the counterclaim, the other Looney heirs, except for Jill Green whose interest was purchased by Bill Looney, asserted that they had joined in the counterclaim. They contended that there were procedural irregularities leading to the October 25, 1995 order and errors in the description of the land. Because no final order had been entered, they opposed dismissal.

On March 6, 1996, Chancellor Van Ausdall issued a letter opinion denying Bill Looney's motion to dismiss the counterclaim. In his letter opinion, the chancellor stated that the October 25, 1995 order on the appointment of commissioners and judgment of partition was not a final order to which the doctrines of *res judicata* and collateral estoppel applied. This was so, according to the letter opinion, because the chancellor had not previously addressed the issue of the alleged partnership ownership between

the parties. On June 20, 1997, an order incorporating the letter opinion was filed.

Chancellor Van Ausdall then recused in the case, and Chancellor Graham Partlow was assigned to replace him. Chancellor Partlow held a three-day hearing on the issues raised in the Looney heirs' counterclaim as well as the commissioner's report that the land be partitioned in kind. On December 19, 1997, he ruled that the issues addressed in the counterclaim were barred under the doctrine of *res judicata* because of the October 25, 1995 order. The chancellor further ruled that after this final order and the passage of time under the Rules of Civil Procedure, Chancellor Van Ausdall had no power to vacate or modify his order. The chancellor concluded that the counterclaim should be dismissed, and he confirmed the commissioner's report of a partition in kind.

On March 30, 1998, a formal order of partition, which incorporated the chancellor's rulings and which also awarded Bill Looney attorney's fees of $7,500, was entered. It is from this order that the Looney heirs now appeal and argue three points for reversal: (1) the chancellor erred in concluding that the October 25, 1995 order was a final order that barred the claims made in the counterclaim on grounds of *res judicata* or collateral estoppel; (2) the chancellor erred in concluding that Chancellor Van Ausdall lacked authority to modify his order of October 25, 1995, by his order of June 20, 1997; and (3) the chancellor erred in awarding Bill Looney attorney's fees.

Turning to their first point, the Looney heirs urge that the chancellor was clearly wrong to apply the doctrines of *res judicata* and collateral estoppel because these defenses only apply when a party attempts to assert a claim or contest an issue that has already been resolved by *final judgment* in a *prior* action. Thus, the issue becomes whether the chancellor's October 25, 1995 order constituted a final judgment, notwithstanding the ongoing judicial process to define the land at issue and to divide it.

■ ■ Arkansas law provides that the following elements must be shown in order to establish collateral estoppel: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated;

(3) the issue must have been determined by a final and valid judgment; and (4) the issue must have been essential to the judgment. *See Miller County v. Opportunities, Inc.*, 334 Ark. 88, 971 S.W.2d 781 (1998). With regard to the doctrine of *res judicata*, this court has said that "*res judicata* bars relitigation in a *subsequent* suit when (1) the first suit resulted in a final judgment on the merits, (2) the first suit was based upon proper jurisdiction, (3) the first suit was fully contested in good faith, (4) both suits involve the same claim or cause of action, and (5) both suits involve the same parties or their privies." *See Hamilton v. Arkansas Pollution Control & Ecology Comm'n*, 333 Ark. 370, 373, 969 S.W.2d 653, 655 (1998). (Emphasis added.)

We initially observe that the application of either doctrine depends on whether *prior* litigation has resulted in a final judgment which resolves the matter. Because the order of October 25, 1995, was part of the *same* litigation, application of either doctrine appears inappropriate. But, in any event, it is clear to us that the order of October 25, 1995, was not a final judgment of partition.

The last point becomes obvious when the statutory scheme for partition of land is examined. First, there is an initial judgment of partition declaring the rights of the parties to the land. Ark. Code Ann. § 18-60-412 (1987). Commissioners may then be appointed by the court to make the partition of land according to the rights of the parties. Ark. Code Ann. § 18-60-414(a) (1987). After the report of partition by the commissioners is made, the chancellor may confirm it, remand it to the commissioners, or set it aside for good cause shown. Ark. Code Ann. § 18-60-416 (1987). Subsection (c) of § 18-60-416 seems especially relevant to the case at bar:

> (c) If no cause is shown, the report shall be confirmed, and judgment shall thereupon be given that the partition be firm and effectual forever. The judgment shall be *binding and conclusive* on all the parties to the proceedings, their representatives, and all other persons claiming under them by right derived after the commencement of the proceedings. (Emphasis added.)

A final judgment is "one that dismisses the parties, discharges them from the action, or concludes their rights to the

subject matter in controversy." *McGann v. Pine Bluff Police Dept.*, 334 Ark. 352, 355, 974, S.W.2d 462, 463 (1998); *Petrus v. The Nature Conservancy*, 330 Ark. 722, 957 S.W.2d 688 (1997). We conclude, especially in light of § 18-60-416(c), that the initial order of partition by Chancellor Van Ausdall dated October 25, 1995, was not final so as to bind the parties and be conclusive of their rights. Section 18-60-416(c) is particularly revealing when it says the partition is not "binding and conclusive" of the rights of the parties until the commissioner's report is confirmed and judgment entered.

Our caselaw bolsters our conclusion that the initial order of partition is not a final order from which an appeal can be taken. *See Bell v. Wilson*, 298 Ark. 415, 768 S.W.2d 23 (1989); *Dorazio v. Davis*, 283 Ark. 65, 671 S.W.2d 173 (1984). In *Bell*, the appellants sought the sale of land with proceeds divided among the joint venturers. One defendant counterclaimed and asked for partition of her 12.5 percent undivided interest. The chancellor agreed that this interest could be partitioned. On December 31, 1986, he ordered the partition and appointed five commissioners to conduct the division of land. On December 29, 1987, the commissioners filed a unanimous report of partition with the court. The appellants moved to set aside the report, but after hearing testimony from the chairman of the commissioners, the chancellor issued an order confirming the commissioner's report. The appellants then filed a notice of appeal on April 27, 1988, which was apparently timely from the confirmation order, though not from the initial order of partition. The appellee argued on appeal that the appellants' notice of appeal was untimely because the chancellor entered the initial order of partition on December 31, 1986, and the notice of appeal was not filed until April 27, 1988, after the order confirming the commissioner's report. In holding that the notice of appeal was timely, we expressly overruled our holding in *Smith v. Smith*, 235 Ark. 932, 362 S.W.2d 719 (1962), where we held that the initial decree ordering partition was a final decree from which an appeal could be taken. We affirmed instead our conclusion in *Dorazio v. Davis, supra*, where we recognized that the better view was that a "decree ordering partition either in kind or by a sale and division of the proceeds is

not a final order from which an appeal must be taken." *Bell*, 298 Ark. at 418, 768 S.W.2d at 25. Bill Looney argues that the *Bell* case is distinguishable from the instant case, but we do not agree. On the issue of the finality of the initial partition order, the *Bell* case is dispositive.

Bill Looney goes further, though, and contends that this court should deem the order of October 25, 1995, to be an admission that a fifty-fifty division was a proper adjudication of the rights of the parties, even if there was no final judgment in effect. He adds that the Looney heirs should be bound by their admission and cites us to Rule 36 of the Arkansas Rules of Civil Procedure for the proposition that requests for admission that are admitted are binding on the admitting party for purposes of litigation. Rule 36, however, does not apply in the instant case because requests for admission were never filed by Bill Looney. Moreover, even if this court chose to analogize this situation to admissions under Rule 36, the rule gives the trial court some discretion to allow withdrawal or amendment of an admission. *See* Ark. R. Civ. P. 36(b).

There is, too, the point that we have held that during a trial and prior to final judgment, the trial court is at liberty to reconsider prior rulings and decisions. *See Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996) (judge could reverse himself on ruling regarding motion *in limine*); *Government Employees Ins. Co. v. Akers*, 279 Ark. 72, 648 S.W.2d 492 (1983) (reversal of ruling on motion *in limine*); *Hill, Ledford, Overton & Snyder v. State*, 276 Ark. 300, 634 S.W.2d 120 (1982) (reversal of ruling on constitutionality of the statute); *Schaefer v. Schaefer*, 235 Ark. 870, 362 S.W.2d 444 (1962) (decision changed on when child support payments terminated); *Nancy v. Flaugh*, 221 Ark. 352, 253 S.W.2d 207 (1952) (judge changed mind on submitting issue of liability to the jury); *Arnold v. State*, 220 Ark. 25, 245 S.W.2d 818 (1952) (judge changed mind on submitting issue of punitive damages to jury). We have no doubt that Chancellor Van Ausdall also was at liberty in the instant case to reconsider his order where the full statutory process for partition had not been brought to its conclusion and where the issue presented concerning capital contributions to the partnership had not been raised to the chancellor or decided.

Along this same line, Bill Looney echos the chancellor's conclusion that Chancellor Van Ausdall lacked jurisdiction to modify his October 25, 1995 order due to the passage of time. He emphasizes that the initial order of partition was one on which the parties and commissioners were relying and which the commissioners were implementing, and, as such, it was an order that the Looney heirs were required to have set aside either under Rule 59 or Rule 60 of the Arkansas Rules of Civil Procedure, within the time periods permitted under those rules.

Again we disagree as we do not see Rule 59 or Rule 60 as limiting the authority of the chancellor to reconsider his initial order in the partition process. Rule 59, of course, concerns a motion for a new trial filed after the entry of a judgment which incorporates the results of the trial of the matter. We do not view the initial order of partition as an order contemplated under Rule 59. Nor do we believe that Rule 60(b) limits the chancellor in reconsidering a preliminary partition order, such as in this case. The ninety-day limitation under Rule 60(b) pertains to efforts to correct errors and mistakes such as clerical errors in judgments, orders, and decrees. *See Phillips v. Jacobs*, 305 Ark. 365, 807 S.W.2d 923 (1991). That is not what is involved in the instant case.

In sum, we hold that the order of partition and appointment of commissioners dated October 25, 1995, did not conclude the partition matter or finally resolve the issues regarding all the parties. That did not occur until the chancellor's judgment confirming the commissioner's report on March 30, 1998. *See Bell v. Wilson, supra; Dorazio v. Davis, supra.* Because a final order had not been issued, Chancellor Van Ausdall was free to reconsider and modify his initial order of partition after he learned of the new issues raised by the counterclaim of the Looney heirs.

Because we remand this matter for resolution of the respective rights of the parties in the land to be partitioned, the issue of an appropriate award for costs and attorney's fees is premature. *See* Ark. Code Ann. § 18-60-419(a) & (b) (1987).

Reversed and remanded.