Stephanie Deeanna MOON (Hamilton) *v.*
David MARQUEZ

99-201                                999 S.W.2d 678

Supreme Court of Arkansas
Opinion delivered September 30, 1999

*Shackleford, Phillips, Wineland & Ratcliff, P.A.*, by: *Brian Ratcliff*, for appellant.

*Harrod Law Offices*, by: *David W. Harrod*, for appellee.

LAVENSKI R. SMITH, Justice. Appellant, Stephanie Deeanna Moon ("Moon"), seeks reversal of a chancellor's order modifying the surname of her daughter, "M.M.", to that of the child's natural father, Appellee David Marquez ("Marquez"). The chancellor entered the order following a hearing on appellee's

Petition to Modify Paternity Order. On appeal, appellant contends that the doctrine of *res judicata* should apply to bar a name-change petition subsequent to the initial paternity-determination proceeding. The court of appeals found that *res judicata* did not apply. It also upheld the chancellor's order changing M.M.'s surname. *Moon v. Marquez*, 65 Ark. App. 78, 986 S.W.2d 103 (1999). Moon filed a Petition for Review to this court under Ark. Sup. Ct. R. 1-2(e). We affirm.

Moon and Marquez met in California in 1992. At one time, the parties were engaged to be married. Over time, the relationship deteriorated, and Moon moved back to Arkansas, her home state, while Marquez moved to Alaska with the military. However, prior to moving apart, Moon conceived a child by Marquez. The child, M.M., was born on February 24, 1993. After receiving a birth announcement from Moon, Marquez sought legal representation and filed a Complaint to Establish Paternity on May 18, 1993, in Ashley County Chancery Court. In that complaint, among other things, Marquez requested that the child's surname be changed from Moon to Marquez. On June 22, 1994, the court entered a Paternity Order finding that Marquez was the child's father. This order resulted from the parties agreement, and Marquez dropped his request for name change as part of the settlement. The Chancellor's order reflected that the child's surname would be Moon.

Two-and-a-half years later, on December 9, 1996, Marquez filed a Petition to Modify the Paternity Order. Marquez sought to modify custody or, in the alternative, gain greater visitation with the minor child. Once again he requested that the child's surname be changed to Marquez. In response, Moon filed an answer, and then filed a Motion to Dismiss on May 9, 1997, at which time she raised the affirmative defense of *res judicata*, arguing that the doctrine bars the claim for name change because it could have been litigated in the original paternity action but was abandoned by Marquez. In his response to the Motion to Dismiss, Marquez argued that the chancellor made no specific finding that M.M.'s last name would be Moon instead of Marquez. Instead, the parties reached an agreement on the issue, but it was never decided by the court.

The chancellor heard the modification petition on July 1, 1997. The parties announced at trial that they had reached agreement on all issues except the question of the name change. Trial proceeded with that as the sole issue. Testimony revealed that since the initial paternity order, Marquez had married and moved to San Antonio, Texas. Moon also had married , and she and M.M. resided with her husband, James Hamilton, in Crossett. In his testimony, Marquez stated that he originally agreed that M.M. should use the surname Moon, but now, after Moon's marriage, the child was using the surname Hamilton, as well. Marquez stated that the child's dance-recital program, tap shoes, and backpack all identified her as Hamilton. Additionally, Marquez testified that he sought the change so that he could have a bond with his daughter and avoid confusion for the child as she grows older.

Moon testified and acknowledged she now personally used her husband's surname of Hamilton. However, she denied that they purposely changed her daughter's name to Hamilton. She stated that her daughter was registered at school, the doctor's office, and on her birth certificate as Moon. Moon testified that the dance teacher must have mistakenly put the name "Hamilton" on the dance-recital program. Moon stated she did not know how the name "Hamilton" got on the child's belongings.

On April 1, 1998, the chancellor issued an order modifying the original paternity order. The court approved the parties stipulated agreement as to custody, support, and visitation. On the same date, the chancellor issued a second order finding that Marquez had paid all required child support and more; that he had provided health insurance for the child; that he had "vigorously pursued" visitation with his child; that he had not shirked is responsibilities to the minor child and had made every effort to be a part of her life; that he had met with considerable resistance from Moon; that the mother no longer used the last name "Moon"; that the child was being referred to both as Moon and Hamilton; that using a different name than the mother's maiden name makes it less evident that the child was born out of wedlock; that the natural father desires to have the child bear his name; that the "name change from 'Moon' to 'Marquez' will help strengthen and

enhance the parent-child bond between the biological father" and the child; and that it would be in the child's best interest to bear the surname of Marquez. Moon filed a timely notice of appeal, arguing that *res judicata* bars this claim for a name change.

### Standard of Review

■ ■ Upon a Petition for Review, we review the case as though it had been originally appealed to this court. Ark. Sup. Ct. R. 1-2(e); *Huffman v. Fisher*, 337 Ark. 58, 63, 987 S.W.2d 269, 271 (1999). Also, we review chancery cases de novo on the record, but do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Office of Child Support Enf. v. Eagle*, 336 Ark. 51, 53, 983 S.W.2d 429, 430 (1999).

### Res judicata

The single issue in this appeal is whether the doctrine of *res judicata* applies to bar a claim for name change in a petition to modify a paternity order where the claim had been made in the initial paternity petition but not decided by the court. We hold it does not.

■ *Res judicata* bars relitigation of a claim in a "subsequent" lawsuit when five factors are present. These include: (1) the first suit resulted in a final judgment on the merits, (2) the first suit was based upon proper jurisdiction, (3) the first suit was fully contested in good faith, (4) both suits involve the same claim or cause of action, and (5) both suits involve the same parties or their privies. *See, e.g., Looney v. Looney*, 336 Ark. 542, 546-47, 986 S.W.2d 858, 861 (1999); *Office of Child Support Enforcement v. Williams*, 338 Ark. 347, 350, 995 S.W.2d 338, 339 (1999). Furthermore, *res judicata* bars not only the relitigation of claims that were actually litigated in the first suit, but also those that could have been litigated. *Kulbeth v. Purdom*, 305 Ark. 19, 22, 805 S.W.2d 622, 623 (1991). The purpose of *res judicata* is to put an end to litigation by preventing a party who had one fair trial on a matter from relitigating the matter a second time. *Id.*

■ We have applied this doctrine even in the context of family law. In *Williams*, we held that *res judicata* applied to bar a

man from contesting his paternity of his children when the issue had already been decided in a divorce proceeding. However, with respect to child custody and support, we apply a modified *res judicata*, i.e., one that is subject to changed circumstances and the best interest of the child. In *Thurston v. Pinkstaff*, 292 Ark. 385, 730 S.W.2d 239 (1987), we declined to use an unmodified version of the doctrine of *res judicata* in a child-support matter. Instead, we followed *Clifford v. Danner*,[1] and stated:

> [N]o order for child support is ever res judicata or so final that the obligations of a parent to the child are not subject to modification. The decisions of this Court have for many years adopted the rule that a trial court always has the right to review and modify child support payment in accordance with changing circumstances and may increase or reduce the payments as warranted in each case. *Johnston v. Johnston*, 241 Ark. 551, 408 S.W.2d 885 (1966) and *Lively v. Lively*, 222 Ark. 501, 261 S.W.2d 409 (1953).

*Thurston*, 292 Ark. at 390.

■ In custody matters, we have taken a similar view for over sixty years. In *Tucker v. Turner*, 195 Ark. 632 (1938), we stated:

> The judgment of a chancery court in this state, awarding the custody of an infant child to one of the parents, or to any other person, is a final judgment, from which an appeal lies, but it is not res judicata in the same or another court of this state involving the custody of the same child, where it is shown that the conditions under which the former decree was made have changed and that the best interest of said child demand a reconsideration of said order or decree.

*Tucker*, 195 Ark. at 636. Relying upon *Tucker*, Justice George Rose Smith stated in *Fulks v. Walker*, 224 Ark. 639, 642, 275 S.W. 2d 873, 875 (1955), "By the decided weight of authority the decree is final, reviewable, and, *in the absence of changed conditions, res judicata of the issues.*" In sum, although *res judicata* can apply in domestic-relations matters, with respect to custody and support,

---

[1] 241 Ark. 440, 409 S.W.2d 314 (1966)

we have unequivocally held that it is subject to changed circumstances and the best interest of the child.

■ We now turn to the application of this doctrine to the change of a child's name. We have long held that chancery courts of this state have the power, either by statute or by common law, to change a minor's name when it is in the best interest of the minor to do so. *See Clinton v. Morrow*, 220 Ark. 377, 247 S.W.2d 1015 (1952); *Carroll v. Johnson*, 263 Ark. 280, 565 S.W.2d 10 (1978); *Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988). Appellant contends that *res judicata* should apply to bar a name-change claim in a modification petition even where changed circumstances and best interest support the change. However, appellant presented no authority for the proposition. Indeed, appellant acknowledges that no such authority exists. Instead, appellant merely argues that there is no authority to the contrary. Without question, we have made the best interest of the child the paramount consideration in cases involving name change of a minor. *See Huffman, supra; McCullough v. Henderson*, 304 Ark. 689, 804 S.W.2d 368 (1991)[2]; *Reaves v. Herman*, 309 Ark. 370, 830 S.W.2d 860 (1992). Given that fact, we decline to embrace an inflexible rule that would entirely discount the child's best interest.

■ The chancellor below heard testimony from the parties for and against the name-change petition and decided that the evidence warranted changing the child's surname. The chancellor assessed the credibility of the witnesses, weighed various relevant factors, and made explicit findings in the order based upon evidence of changed circumstances and the best interest of the child. We cannot say the chancellor was clearly erroneous.

Affirmed.

---

[2] It should also be noted that in *McCullough*, the father brought the petition for name change several months after paternity was established. *Res judicata* was not raised as an affirmative defense in that case.