NORTHEAST ARKANSAS INTERNAL MEDICINE
CLINIC, P.A. *v.* Jason CASEY, M.D.

CA 01-358                                        61 S.W.3d 850

Court of Appeals of Arkansas
Division I
Opinion delivered November 28, 2001

*Womack, Landis, Phelps, McNeill & McDaniel,* by: *D. Chris Gardner* and *Tom D. Womack,* for appellant/cross-appellee.

*Mike Everett,* for appellee/cross-appellant.

JOHN E. JENNINGS, Judge. Appellant Northeast Arkansas Internal Medicine Clinic appeals from an order of summary judgment and the dismissal of its subsequently filed amended complaint. Appellee Jason Casey, M.D., cross-appeals from the denial of his motion to dismiss appellant's amended answer to his counterclaim. On direct appeal, we affirm the grant of summary judgment and reverse the dismissal of appellant's amended complaint. On cross-appeal, we affirm the refusal to dismiss appellant's amended answer.

Appellant is a professional corporation that provides medical services in the state of Arkansas. Appellee is a duly licensed physician. On March 31, 1995, appellant and appellee executed an employment contract wherein appellee agreed to practice medicine for appellant. Section 6.1 of the agreement established the manner in which appellee would be compensated for his services as follows:

> *Base and Incentive Compensation.* For all services rendered by the Physician under this Agreement in whatever capacity rendered, the physician shall have and receive remuneration computed as follows: (1) Commence with the gross charges for patient services performed by the Physician, reduced by (2) adjustments to such charges for Medicare, Medicaid, and other write-offs, professional courtesies, and non-collectibles, which shall result in a determination of adjusted charges; (3) adjusted charges applicable to the Physician shall be compared to the amount of adjusted charges attributable to all physicians of the Clinic to determine the fraction thereof; and (4) said fraction shall be multiplied times the net income of the Clinic, which shall be defined for this purpose as the total annual revenues of the Clinic, less all non-physician expenses and less payments made to physician employees whose compensation is a salary plus bonus based on adjusted charges, and the resulting amount shall equal (5) the amount of total compensation to be paid during the employment term. Of said amount, the Physician shall receive a gross salary of $6,250 per month, payable on the last day of each month, less appropriate payroll deductions for taxes and other withholdings, and the remainder of the total compensation shall be paid during the course of the term in bonus compensation and fringe benefits. . . .

For approximately four years following execution of the contract, appellee received his fixed monthly salary without fail, though he often did not produce enough revenue to cover his salary. By April 1999, however, when the amount paid to him as salary had exceeded the earnings he generated based on the contractual formula by $71,825.21, appellant told appellee that it expected repayment of the money. At that point, appellee tendered his resignation, effective July 28, 1999. Part of his May through July salary was applied to the deficit, reducing it to $66,937.25.

On September 23, 1999, appellant sued appellee to recover $66,937.25, and appellee counterclaimed for three months of unpaid salary. Following discovery, both parties moved for summary judgment and agreed that no genuine issues of material fact remained to be tried. In its motion, appellant contended that the employment agreement had consistently been applied in such a way that, if a physician's compensation, as calculated by the contractual formula, was less than his salary draw, the deficit amount would be owed by the physician to appellant. Appellee argued that, because the contract did not mention that such deficits would be reimbursed from a physician's monthly salary, the contract was ambiguous, requiring it to be construed against appellant, the drafter. Attached to appellant's motion was the affidavit of Robert Taylor, M.D., a shareholder, director, and physician–employee of appellant. Dr. Taylor stated that the physicians who practiced medicine as employees of appellant were also shareholders and directors, and the compensation formula set out in Section 6.1 was an income distribution plan designed to allow the physicians to share in the company's profits in accordance with the revenues they generated. Taylor further stated that, if a physician's compensation as calculated by the formula in Section 6.1 was less than his monthly draw, the physician would repay the deficit from his future earnings. As an example of this, Dr. Taylor mentioned two occasions on which appellee had paid appellant $8,103.44 and $1,000 to cover deficits. However, attachments to appellee's motion showed that those amounts were recouped not from appellee's salary but from bonuses that were due him.

On July 5, 2000, the trial judge entered summary judgment in favor of appellee. He found that Section 6.1 was ambiguous in that it did not set forth the parties' rights in the event an employee did not produce enough revenue to cover his salary. Based on that finding, he construed the contract against appellant and ruled that appellant was not entitled to recoup any deficits from appellee. The

order left standing appellee's counterclaim for three months' unpaid salary.

On August 23, 2000, several weeks after summary judgment had been entered, appellant filed an amended complaint alleging that appellee had breached the employment contract by failing to perform certain administrative duties. According to the complaint, appellee's failure to submit certain billing documents cost appellant at least $40,000, and judgment was sought for that amount. Appellee's alleged breach was also set forth by appellant in an amended answer as a defense to appellee's counterclaim. Appellee moved to dismiss the second amended complaint and the amended answer on the ground of *res judicata*. He argued that appellant's allegations regarding breach of administrative duties could have been litigated prior to the entry of summary judgment on July 5, 2000. The trial judge agreed that *res judicata* precluded appellant from seeking damages on the breach-of-contract claim and dismissed the second amended complaint. However, he refused to dismiss appellant's amended answer and let the alleged breach stand as a defense to appellee's counterclaim. Appellant now appeals the entry of summary judgment and the dismissal of its second amended complaint. Appellee cross-appeals the trial court's refusal to dismiss appellant's amended answer.[1]

■ Appellant first argues that the trial court erred in entering summary judgment in favor of appellee. In most summary-judgment cases, we need only decide if the grant of summary judgment was appropriate, considering whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *See Inge v. Walker*, 70 Ark. App. 114, 15 S.W.3d 348 (2000). However, in a summary-judgment matter where the parties agree on the facts, as the parties do in this case, we simply determine whether appellee was entitled to judgment as a matter of law. *Jackson v. City of Blytheville*, 345 Ark. 56, 43 S.W.3d 748 (2001).

Section 6.1 of the parties' contract provides that appellee shall receive as compensation a percentage of appellant's net income in proportion to the revenue he generates. For example (using a simplified version of the formula), if appellant's net income over an

---

[1] Although the court's order was not final because it left pending appellee's counterclaim, the court set forth sufficient reasons, pursuant to Ark. R. Civ. P. 54(b), to allow for immediate appeal.

applicable period were $3,000,000 and appellee generated one per-cent of that revenue, his compensation would be $30,000. If, dur-ing that period, he had received a salary of $25,000, he would be entitled to a $5,000 bonus under the clear terms of the contract. However, the contract is silent as to what would occur if appellee received a $25,000 salary, yet only $20,000 of the revenue was attributable to him.

The contract's silence on that matter makes this case similar to *Carter Construction Co. v. Sims*, 253 Ark. 868, 491 S.W.2d 50 (1973). There, Carter employed Sims as a superintendent on three con-struction jobs. He agreed to pay Sims forty-nine percent of the net profit on the jobs and to "advance" Sims $3,000 per month until the jobs were completed, whereupon the advances would be deducted from the net profits due Sims. The agreement mentioned nothing about a refund of advances in the event no profits were realized. In a subsequent lawsuit between the two men, a jury found that Sims was not entitled to any lost profits but was entitled to his $3,000-per-month salary for the duration of the jobs. On appeal, the supreme court quoted numerous authorities to the effect that, unless the parties agree otherwise, a drawing account is treated by the courts as a guaranteed minimum compensation, and an excess of advances cannot be recovered by the employer.

We agree with the trial court that *Carter* prevents appel-lant's recoupment of salary payments for the purpose of offsetting appellee's production deficit. As in *Carter*, the parties here made no agreement for recoupment in the event that appellee failed to generate sufficient revenues to cover his salary. Therefore, appellee's salary must be treated as being owed to him regardless of the amount of revenues attributable to him. Appellant attempts to dis-tinguish *Carter* on the basis that it involved a master–servant rela-tionship while this case involves a profit sharing relationship among professionals. The distinction makes no difference in this case. Appellee was an employee of appellant, under the express terms of the contract and, like the employee in *Carter*, was compensated by a salary against a percentage of the profits.

Appellant also argues that if a physician is permitted to receive his full salary despite his deficient production, the unfair result will be that the high-revenue producers among the physicians will be subsidizing those who do not produce. Clearly, appellant as the drafter of the agreement could have avoided this result by including a provision to cover the possibility that a physician's

revenues might be inadequate to meet his salary. Instead, the contract is silent on this point. In *Lee v. Hot Springs Village Golf School*, 58 Ark. App. 293, 951 S.W.2d 315 (1997), we held that silence on such a matter renders a contract ambiguous, a holding echoed by the trial judge in this case. The judge resolved the ambiguity in favor of appellee, and there is ample basis for his having done so.[2] It was proper for him to construe the contract against appellant as the party who drafted it. *See Bradley v. Arkansas La. Gas Co.*, 280 Ark. 492, 659 S.W.2d 180 (1983). It is also noteworthy that appellee's salary was not reduced to recover a deficit during the entirety of his employment, even though deficits often existed. Such a course of dealing and the parties' own construction of the contract are relevant to resolve an ambiguity. *See generally Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998); *Arkansas Power & Light v. Thompson*, 191 Ark. 171, 83 S.W.2d 838 (1935). Although appellant argues that appellee's reduction in bonus compensation evidences an understanding that deficits could be recouped, the fact that no recoupments were made from appellee's salary supports the trial court's ruling. We affirm the trial court's grant of summary judgment in favor of the appellee.

■ Next, appellant contends that the trial court erred in dismissing its second amended complaint on the ground of *res judicata*. The doctrine of *res judicata* bars relitigation of a subsequent suit when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Office of Child Support Enforcement v. Williams*, 338 Ark. 347, 995 S.W.2d 338 (1999).

■ The trial court held that its interlocutory ruling granting summary judgment precluded appellant from asserting other claims during the pendency of the same lawsuit. We hold that under these circumstances the doctrine of *res judicata* does not apply. Only a final judgment on the merits may be given a preclusive effect. *See Looney v. Looney*, 336 Ark. 542, 986 S.W.2d 858 (1999) (holding that the application of *res judicata* to further proceedings in the same lawsuit appears inappropriate). The summary judgment granted by the trial

---

[2] There are circumstances in which a contract provision, even though ambiguous, may be interpreted as a matter of law. *See Smith v. Prudential Prop. & Cas. Co.*, 340 Ark. 335, 10 S.W.3d 846 (2000). Here, the parties agree that there is no genuine issue of material fact remaining, and there is no dispute as to the facts as contained in the discovery pleadings and attachments to the parties' motions.

court was not a final judgment and could even have been reconsidered had the court so desired. *See Stewart Title Guar. Co. v. Cassill*, 41 Ark. App. 22, 847 S.W.2d 465 (1993). It follows that the dismissal of appellant's second amended complaint was error.

■ The same reasoning applies to appellee's contention on cross-appeal that *res judicata* should have precluded appellant from filing an amended answer to the counterclaim. The amended answer was not barred by *res judicata*, and the trial judge was correct in allowing it to stand.

Affirmed in part and reversed and remanded in part on direct appeal; affirmed on cross-appeal.

HART, J., agrees.

BIRD, J., concurs.

SAM BIRD, Judge, concurring. I agree with the majority's holding that the Clinic's amended complaint was erroneously dismissed through summary judgment on the ground of *res judicata*. However, I write separately for the sole purpose of making it clear that a summary judgment can be a final judgment for *res judicata* purposes.

Summary judgment is an adjudication on the merits that bars a subsequent suit. *National Bank of Commerce v. Dow Chem. Co.*, 338 Ark. 752, 1 S.W.2d 443 (1999); *Magness v. McEntyre*, 305 Ark. 503, 808 S.W.2d 783 (1991). However, under Arkansas Rule of Civil Procedure 54(b)(1), a summary judgment that does not resolve all claims between all the parties to the suit is not a final, appealable judgment. *See French v. Brooks Sports Ctr., Inc.*, 57 Ark. App. 30, 940 S.W.2d 507 (1997). Arkansas Rule of Civil Procedure 54(b) provides, in relevant part, as follows:

> (1) *Certification of Final Judgment*. When more than one claim for relief is presented in an action, weter as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination, supported by specific factual findings, that there is no just reason for delay and upon an express direction for the entry of judgment. In the event the court so finds, it shall execute [a certification].

(2) *Lack of Certification.* Absent the executed certificate required by paragraph (1) of this subdivision, any judgment, order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the judgment, order, or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all of the parties.

In light of Rule 54(b), the general rule that summary judgment is an adjudication on the merits that bars a subsequent suit must be interpreted to apply solely to summary judgments that resolve all claims between all parties or are certified as final by the court. The summary judgment order in the case at bar did not resolve all claims, as the order did not dispose of the appellee's pending counterclaim. The order neither contained the findings nor certification necessary under Rule 54 for the summary judgment order to become final. Thus, the summary judgment order was not a final order and could not constitute a *res judicata* bar to the amended complaint. Accordingly, the trial court's grant of summary judgment on the ground of *res judicata* was erroneous.