OFFICE of CHILD SUPPORT ENFORCEMENT;
Leslie M. King Pevelko *v.* Charles W. KING

CA 02-481 100 S.W.3d 95

Court of Appeals of Arkansas
Division II
Opinion delivered March 12, 2003

*Amy L. Ford*, Att'y Specialist, Office of Child Support Enforcement, for appellant.

*Cuffman and Phillips*, by: *James H. Phillips*, for appellee.

S AM BIRD, Judge. Arkansas Office of Child Support Enforcement and Leslie Pevelko appeal a 2001 order of the Pulaski County Circuit Court denying their motion for judgment for child-support arrearages against Charles King for a period of time between 1986 and 1995. The appellants raise the following points of error: (1) the trial court erred in finding that the failure to raise the issue of child-support arrearages, accrued under an existing order, at the time a new order of child support was entered, acted as a bar by *res judicata* in a later motion to seek judgment and collection of arrears; (2) the trial court erred in finding that Leslie Pevelko had the opportunity to raise the issue of past-due child support in Oregon; (3) the trial court erred in finding that OCSE or Pevelko was required to raise the issue of child-support arrearages in a 1995 action to set support based upon King's ability to pay. We agree that these findings were made in error; therefore, we reverse and remand for entry of judgment for the accrued support.

We first summarize the proceedings and orders that led to this appeal. Leslie Pevelko and Charles King were divorced on February 28, 1986. They were awarded joint custody of their only child, with physical custody to Pevelko, and King was ordered to pay monthly child support of $100. A court order of November 13, 1990, abated the order of child support and changed custody to King, who by that time had taken physical custody of the child. Pevelko petitioned the court to set aside the November 13 order, alleging that neither she nor her attorney had received notice of the hearing. She also filed a motion alleging that King was $400 in arrears on child-support payments as of February 19, 1991; praying that King be made to show cause why he should not be held in contempt, and praying for increased child-support payments. On May 13, 1991, the trial court set aside and voided *ab initio* the November 1990 order that had changed custody to King and abated his child support.

A hearing date was set on Pevelko's motion for payment of child-support arrearages, and Pevelko filed a motion to transfer the custody issue to the State of Oregon pursuant to the Uniform Child Custody Jurisdiction Act. In an order of December 16, 1991, the court noted that King was a resident of Texas, and that Pevelko and the child had lived in Oregon since September 1989; the parties were ordered to maintain joint custody of the child, who would continue to live primarily with Pevelko. Finding Oregon to be the most convenient forum for the parties, the court deferred future actions to the appropriate court in that state and declined further jurisdiction over subsequent matters in the case. The order stated that Pevelko's motion for back child support and for increase in child support was not heard, and that she "may pursue any such actions through the State of Oregon."

A "motion to set support" was filed on November 28, 1995, by OCSE on behalf of Pevelko after she and the child returned to Arkansas. The motion recited the history of the case beginning with the 1986 decree and order of child support. On March 26, 1996, pursuant to the motion to set support, the court ordered King to pay $297 a month, $270 as current support and $27 to be applied to retroactive support from the date of the motion to the date of the hearing.

In November 2000 King moved to abate his child support for a period of time when the child had resided with him in Dallas. Pevelko counterclaimed for back child support from March 1986 to March 1996, and for increased future support. The court deferred child-support matters until OCSE was notified. OCSE then filed a motion adopting Pevelko's counterclaim.

After a hearing in October 2001, both sides filed posttrial briefs on the issue of whether Pevelko was entitled to seek child-support payments for alleged arrearages before November 1995. A resulting order of November 2001 granted abatement of child support during the time that the child had lived with King in Dallas, granted $1971 in child-support arrears against him, and found that he was not in contempt of court. Appellants' request for child-support arrears prior to December 1995 was denied.

At the request of OCSE, the court subsequently entered findings of fact and conclusions of law regarding its decision. The conclusions of law included the following:

> 1. Ms. Pevelko's motion is barred by *res judicata* in that she did not raise the issue of arrearages in her November 1995 motion to set support. That motion resulted in a final order on child support and even awarded a small amount for arrearages dating back to the date of the filing of the motion. No allegation was made regarding arrearages prior to 1995. *See State of Arkansas Child Support Enforcement v. Thornell Williams*, 995 S.W.2d 336 (1999).

> 2. Further, Ms. Pevelko had the opportunity to raise the issue of back child support in Oregon, based on the order of December 16, 1991, and in the November 1995 motion to set support.

> 3. Finally, the November 1995 motion resulted in an order setting support as if for the first time. . . . By failing to pursue the alleged arrearages when the case was pursued again in this state in 1995, Mr. King and the Court were led to believe that all issues, including arrearages, had been resolved up to that point.

> 4. Therefore, Ms. Pevelko is not entitled to seek arrearages behind the November 1995 motion.

As shown earlier in this opinion, the divorce decree of 1986 included the order that King pay child support. In 1995 the court entered an order for an increased amount of child support without mention of arrearages. In November 2000 King filed a motion to abate support for a period of time that the child had resided with him, and Pevelko counterclaimed for back support for a period from 1986 to 1996. As their first point of appeal, appellants contend that the court erred as a matter of law in finding that *res judicata* barred them from seeking judgment on past-due child support that had accrued before 1995. We agree, and we reverse the ruling of the trial court on this issue.

■ When the amount of child support is at issue, we will not reverse the fact-finder absent an abuse of discretion. *McWhorter v. McWhorter*, 346 Ark. 475, 58 S.W.3d 840 (2001). However, the trial judge's conclusion of law is given no deference on appeal. *Duchac v. City of Hot Springs*, 67 Ark. App. 98, 992 S.W.2d 174 (1999). If the law has been erroneously applied and the appellant has suffered prejudice, the erroneous ruling is reversed; manifestly, the trial judge does not have a better opportunity to apply the law than does the appellate court. *Id*.

■ Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Office of Child Support Enfcm't v. Williams*, 338 Ark. 347, 995 S.W.2d 338 (1999). *Res judicata* bars relitigation of a subsequent suit when five factors are present: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; (5) both suits involve the same parties or their privies. *Moon v. Marquez*, 338 Ark. 636, 999 S.W.2d 678 (1999). *Res judicata* bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. *Id*. The policy of the doctrine is to prevent a party's relitigating a matter on which it has already been given a fair trial. *Id*.

■ Here, in ruling that appellants' motion for child-support arrearages prior to November 1995 was barred by *res judicata*, the trial court relied upon *Office of Child Support Enfcm't v. Williams*, 338 Ark. 347, 995 S.W.2d 338 (1999). The *Williams* court held that, as between parties to a divorce, *res judicata* bars a former husband and wife from relitigating paternity after having agreed in the divorce action that a child was born of the marriage. With respect to child support, custody, and even the changing of a child's surname, the supreme court has applied a modified *res judicata*, which is subject to changed circumstances and the best interest of the child. *Moon v. Marquez, supra*; see *Thurston v. Pinkstaff*, 292 Ark. 385, 730 S.W.2d 239 (1987).

■ Once a child-support payment falls due, it becomes vested and a debt due the payee. *Roark v. Roark*, 34 Ark. App. 250, 809 SW.2d 822 (1991). Under Arkansas Code Annotated section 9-14-234(b) (Supp.1995), enacted as part of Act 383 of 1989, any order providing for payment of child support becomes a final judgment subject to writ of garnishment or execution for any money which has accrued until the time either party moves through proper motion filed with the court and served on the other party to set aside, alter, or modify the decree, judgment, or order. Ark. Code Ann. § 9-14-234(b) (Repl. 1991). Furthermore, the court may not set aside, alter, or modify any decree, judgment or order which has accrued unpaid support prior to the filing of a motion to do so. Ark. Code Ann. §§ 9-14-234(c) and 9-12-314(c).

■ These statutes were enacted in order to comply with federal regulations and to insure that the State will be eligible for federal funding. *Sullivan v. Edens*, 304 Ark. 133, 801 S.W.2d 32 (1990). Enforcement of child-support judgments are treated the same as enforcement of other judgments, and a child-support judgment is subject to the equitable defenses that apply to all other judgments. *Burnett v. Burnett*, 313 Ark. 599, 855 S.W.2d 952 (1993), *citing* 54 Fed. Reg. 15,761 (April 19, 1989). If the obligor presents to the court or administrative authority a basis for laches or an equitable estoppel defense, there may be circumstances

under which the court or administrative authority will decline to permit enforcement of the child-support judgment. *Id.* The elements of equitable estoppel are these: (1) the party to be estopped must know the facts; (2) she must intend that her conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; (4) the party asserting estoppel must rely on the other's conduct to his detriment. *Arkansas Dep't of Human Servs. v. Cameron,* 36 Ark. App. 105, 818 S.W.2d 591 (1991).

 In summary, any past-due child support accrues and is a judgment until altered prospectively by proper motion and order of the court. Ark. Code Ann. § 9-14-234(b) and (c). Because in the present case there was no court order modifying the 1986 order, "modified *res judicata*" does not come into play regarding past opportunity to litigate issues of accrued support. Nor did King argue an equitable basis to prevent the collection of past-due child support. Through his attorney, he stated to the trial court that this was not a matter of equity, but a matter of *res judicata.* Even questions raised at the trial level, if left unresolved, are waived and may not be relied upon on appeal; the trial court's ruling on a challanged issue is a prerequisite to our review of that issue. *Office of Child Support Enfcm't v. Neely,* 73 Ark. App. 198, 41 S.W.3d 423 (2001).

 We reverse the trial court's finding that the failure to pursue alleged arrearages when the case was pursued in 1995 acted as a bar by *res judicata* to appellants' later motion for judgment and collection of arrearages. In light of this holding, we need not address the second and third points on appeal. We reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

ROBBINS and GRIFFEN, JJ., agree.