2011 Ark. 82

**Jeffrey J. HARDY, Appellant,**

v.

**Diana HARDY, Appellee.**

No. 10–698.

Supreme Court of Arkansas.

Feb. 24, 2011.

Betty J. Hardy, Little Rock, for appellant.

Pamela S. Osment, Conway, for appellee.

KAREN R. BAKER, Justice.

⌊₁Appellant Jeffrey J. Hardy appeals from orders of the Faulkner County Circuit Court entered on February 18, 2009, and April 9, 2010. Jeffrey argues that the trial court erred in finding that res judicata foreclosed his challenge to the paternity of, and duty to pay child support for, T.H., a child conceived prior to, but born during his marriage to appellee Diana Hardy; quashing discovery he propounded to show that Diana committed fraud under Ark. R. Civ. P. 60(c)(4) and denying his motion for acknowledgment of DNA test results excluding him as the father of T.H.; and finding that Ark.Code Ann. § 9–10–115 and other statutes, as applied, are constitutional. Our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(b)(4), (5) (2010). We affirm the decision of the circuit court.

## I. Background Facts and Prior Litigation

Jeffrey and Diana were married on April 15, 1995. Diana filed for divorce on July 11, 2002, and alleged that two sons were born of their union—T.H. on May 21, 1995, and W.H. ⌊₂on July 17, 1996. In his answer filed on July 25, 2002, Jeffrey denied that two children had been born of their union, and, on February 3, 2003, he moved for a paternity test relating to T.H. and asserted: (1) that prior to the marriage, Diana stated that she was pregnant and that although she had recently engaged in sexual intercourse with another person, that Jeffrey was the father of the minor child, and that she has continued that representation; and (2) that although

T.H. was born during the marriage, Jeffrey has substantial reason to believe that he is not the father of the minor child. Diana filed a response to Jeffrey's motion for paternity testing in which she asserted that he did not have substantial reason to believe that he was not T.H.'s father.

On February 10, 2003, a hearing was held on the divorce petition and on the paternity motion. Jeffrey testified that he questioned Diana one or two days before they were married about the birth date of her unborn child T.H. He stated that he wanted testing done at that time to determine paternity, but Diana asserted that she would not marry him if he sought testing. He stated that the only other time he sought DNA testing was shortly prior to the hearing. He testified that Diana admitted to having unprotected sex with someone other than him shortly before he met her.

Diana testified that she told Jeffrey about her pregnancy as soon as she knew. She also said that she told Jeffrey about the prior sexual contact on the night she first met him. She stated that the first time the topic of the father of her child came up was on the day of their marriage. She declared that she told him that they could cancel the wedding, she could have the baby, have paternity testing done, and then determine if they would get married, but Jeffrey declined. She said this discussion took place on April 12, 1995, and never surfaced again until one week before the hearing.

On March 4, 2003, a divorce decree was entered. The decree awarded custody of the two minor children to Diana, granted Jeffrey visitation, and ordered him to pay child support; however, it made no express finding regarding the paternity of T.H. On March 12, 2003, the circuit judge entered an order denying Jeffrey's motion

for paternity testing, finding that it was not in T.H.'s best interest.

## II. *The Current Litigation*

On November 8, 2007, Diana filed a petition for contempt against Jeffrey, who had begun paying a reduced amount of monthly child support. Jeffrey answered on December 3, 2007, and stated that he had obtained a paternity test confirming that he was not the biological father of T.H. and moved to set aside the establishment of paternity under Ark.Code Ann. § 9–10–115(f)(1). Jeffrey served Diana with discovery requests, including interrogatories and requests for admission, regarding the paternity of T.H. On January 22, 2008, Diana objected to the discovery requests and moved for a protective order on February 1, 2008, arguing that the discovery requests were made for purposes of embarrassment and harassment.

Jeffrey next filed a motion to compel Diana to respond to his discovery requests. On February 13, 2008, he served Diana's prenatal-care physician, Paul McChristian, and the Custodian of Records of Conway Regional Medical Center with subpoenas requesting that they appear for depositions and that they produce Diana's prenatal records. Diana moved to quash the subpoenas on the same day.

Following a hearing, the circuit judge entered orders on February 15, 2008, quashing the subpoenas issued to Dr. McChristian and the Custodian of Records and denying Jeffrey's motion to compel responses to his discovery requests. Jeffrey then filed an amended response to Diana's motion for contempt and filed a motion for acknowledgment of the paternity test of T.H. and to set aside the 2003 divorce decree under Ark. R. Civ. P. 60(c)(4). Jeffrey asserted that he was entitled to relief from the divorce decree under Rule 60(c)(4) because Diana had

committed fraud upon the court by misrepresenting that there was no substantial reason to believe that he was not the father of T.H.

After receiving notice that Jeffrey intended to depose an expert regarding his paternity test of T.H., Diana filed a motion to quash the deposition on February 20, 2008. On February 21, 2008, the circuit judge quashed the deposition and ordered that "[n]o depositions shall be taken regarding the issue of paternity without approval of the Court." On February 28, 2008, following a hearing on the matter, the circuit judge entered an order finding Jeffrey in willful contempt for his failure to pay child support as ordered by the divorce decree.

On July 16, 2008, Jeffrey moved for a declaratory judgment seeking a declaration that the common-law presumption that a child born to a married couple is the child of the husband is unconstitutional. He also requested the circuit judge to reconsider the order denying his discovery request for Diana's prenatal records and asserted that there was a likelihood that he would succeed on the merits of his claim to set aside the divorce decree under Rule 60(c)(4) if his request for the records was granted. Diana responded that Jeffrey's motion for declaratory judgment was untimely because the issues it raised had been addressed in the 2003 orders from which he had not appealed.

After hearing arguments from the parties, the circuit judge entered an order on February 18, 2009, denying Jeffrey's motion for a declaratory judgment. The circuit judge also denied Jeffrey's motion for reconsideration of his discovery request for Diana's prenatal records. Jeffrey then appealed to this court; however, he never obtained a ruling on his motion to set aside the divorce decree on the grounds of fraud and this court dismissed the appeal without prejudice because a claim for relief remained outstanding and there was no Rule 54(b) certification from the circuit court. *Hardy v. Hardy*, 2010 Ark. 41, 2010 WL 322996. A final order dismissing the remaining claim has now been entered, and the appeal is properly before this court.

## III. *Res Judicata*

The purpose of res judicata is to put an end to litigation by preventing a party who has already had a fair trial on the matter from litigating it again. *Skallerup v. City of Hot Springs*, 2009 Ark. 276, 309 S.W.3d 196; *Powell v. Lane*, 375 Ark. 178, 289 S.W.3d 440 (2008). Res judicata consists of "two facets, one being issue preclusion and the other claim preclusion." *Carwell Elevator Co. v. Leathers*, 352 Ark. 381, 388, 101 S.W.3d 211, 216 (2003). Collateral estoppel, the issue preclusion aspect of res judicata, bars relitigation of issues of law or fact previously litigated, provided that the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question and that the issue was essential to the judgment. *Morgan v. Turner*, 2010 Ark. 245, 368 S.W.3d 888. To apply collateral estoppel, the following elements must be present: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Id.* Although collateral estoppel may be asserted by a stranger to the first judgment, the party against whom it is asserted must have been a party to the earlier action and must have had a full and fair opportunity to litigate the issue in the first proceeding. *Id.*

The claim-preclusion aspect of res judicata bars relitigation when five factors are present: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Powell*, 375 Ark. 178, 289 S.W.3d 440; *Moon v. Marquez*, 338 Ark. 636, 999 S.W.2d 678 (1999); *Looney v. Looney*, 336 Ark. 542, 986 S.W.2d 858 (1999); *State Office of Child Support Enforcement v. Williams*, 338 Ark. 347, 995 S.W.2d 338 (1999). Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. Beebe v. Fountain Lake *School Dist.*, 365 Ark. 536, 231 S.W.3d 628 (2006); *Office of Child Support Enforcement v. Willis*, 347 Ark. 6, 59 S.W.3d 438 (2001). Also, res judicata bars a subsequent lawsuit that raises issues resolved in a final judgment from which an appeal was not taken in a previous lawsuit. *Hunt v. Perry*, 357 Ark. 224, 162 S.W.3d 891 (2004) (citing *Hunt v. Perry*, 355 Ark. 303, 138 S.W.3d 656 (2003)).

Because this case is based on the same events as the subject matter of the previous lawsuit, we must determine whether the claim-preclusion aspect of res judicata is applicable. The five factors necessary to establish claim preclusion are: First, the initial suit resulted in a final judgment from which Jeffrey did not appeal; Second, the Faulkner County Circuit Court had jurisdiction over the divorce suit; Third, Jeffrey's denial of paternity of T.H. and his motion for paternity testing was a good-faith contest of Diana's complaint for divorce; Fourth, both suits involved Jeffrey's challenge to the paternity of T.H.; And fifth, both suits involved the same parties. For these reasons, Jeffrey is barred by the doctrine of res judicata from relitigating the issue of paternity, and the circuit court did not err in finding that Jeffrey could not relitigate the issue of paternity.

Jeffrey argues that res judicata does not bar the instant case because the prior proceeding did not involve the claim being raised here. He asserts that the divorce decree does not establish his paternity because it does not expressly state that he is the father of T.H. The divorce decree awarded custody to Diana, granted Jeffrey visitation, and ordered him to pay child support for T.H. and W.H., but it did not make an express finding that he was the father of T.H. However, the issue of paternity was clearly litigated in the divorce proceeding. On February 10, 2003, a hearing was held on the divorce petition and on Jeffrey's paternity motion, and the trial court commented as follows:

At this point in time, I'm going to deny the motion for paternity testing. I do think that the overwhelming presumption is that Mr. Hardy is the father of the child. The child was born during the marriage. And while I would like to reserve if at all possible, that question, I don't think I can ... I think once we go past today, I think we are done. But I do think the best interests of [T.H.] is not to illegitimize him, at this point in time.... [I] am going to deny the motion. And the presumption that Mr. Hardy is the father will remain, he is. I'm not going to illegitimize [T.H.] at this point in time. I do think his best interest is—I've said it for the third time. Is for this eight-year-old boy, the only father he's known is Mr. Hardy. Mr. Hardy even admits on the stand that if he were found to not be the father, he would still seek to adopt [T.H.], and that shows to me that Mr. Hardy considers himself to be the fa-

ther. And wants to continue in that capacity.

On March 4, 2003, the divorce decree was entered and constituted a final judgment. *See Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002) (citing *Tucker v. Turner*, 195 Ark. 632, 113 S.W.2d 508 (1938)). Jeffrey never appealed from the denial of his motion for paternity testing or from the divorce decree that required him to make child-support payments for T.H. Because Jeffrey did not appeal, he cannot now challenge paternity. *Redden v. Arkansas State Bd. of Law Examiners*, 371 Ark. 584, 269 S.W.3d 359 (2007); *Hunt, supra.*

■ Jeffrey also argues that res judicata is not applicable to this action because Diana obtained child support through fraud. Specifically, he asserts that the portion of the divorce decree that required him to pay child support for T.H. can be set aside or modified pursuant to Ark. R. Civ. P. 60(c)(4).[1] We note at the outset that it is within the discretion of the circuit court to determine whether it has jurisdiction under Rule 60 to set aside a judgment, and the question on appeal is whether the trial judge abused that discretion. *See New Holland Credit Co. v. Hill*, 362 Ark. 329, 208 S.W.3d 191 (2005).

Rule 60(c) states in relevant part:

(c) Grounds for Setting Aside Judgment, Other than Default Judgment, After Ninety Days. The court in which a judgment, other than a default judgment [which may be set aside in accordance with Rule 55(c) ] has been rendered or order made shall have the power, after the expiration of ninety (90) days of the filing of said judgment with the clerk of the court, to vacate or modify such judgment or order:

(4) For misrepresentation or fraud (whether heretofore denominated intrinsic or extrinsic) by an adverse party.

Ark. R. Civ. P. 60(c)(4) (2010). Thus, pursuant to Rule 60(c)(4), a judgment may be vacated more than ninety days after being filed with the clerk where there was misrepresentation or fraud.

Jeffrey's allegations of fraud are premised upon two things: (1) averments made in Diana's pleadings filed during the divorce proceeding; and (2) Diana's testimony at the hearing on February 10, 2003, before the entry of the divorce decree. He alleges fraud on the court by Diana's assertion that there was not a substantial reason to believe Jeffrey was not the father of T.H.

In support of his argument, Jeffrey cites to *Dickson v. Fletcher*, 361 Ark. 244, 206 S.W.3d 229 (2005), where this court affirmed the use of Rule 60(c)(4) to modify a divorce decree when the former spouse had failed to disclose securities as marital assets. Diana counters that in *Martin v. Pierce*, 370 Ark. 53, 257 S.W.3d 82 (2007), this court rejected the application of Rule 60(c)(4) to the issue of paternity established under a divorce decree because of the policy considerations in delegitimizing a child. In *Martin*, this court held that Rule 60(c)(4) could not be used to void paternity established under a divorce decree. In this case, Jeffrey admitted during the divorce hearing that before he and Diana married, he questioned her about the paternity of the unborn T.H., and that he asked for a paternity test but did not obtain one. At the same hearing, Diana

[1] Jeffrey briefly asserts that the law-of-the-case doctrine does not bar modification of the divorce decree pursuant to Rule 60(c)(4) and cites us to *Davis v. Davis*, 291 Ark. 473, 725 S.W.2d 845 (1987). In *Davis*, we acknowledged that Rule 60(c)(4) was an exception to the law-of-the-case doctrine. However, *Davis* is inapposite because Jeffrey failed to appeal from the final judgment in the original suit.

admitted there was a possibility that T.H. was not Jeffrey's child. After this hearing, the divorce decree was entered, and later Jeffrey's motion for paternity testing was denied. Once again, his failure to appeal these rulings forecloses his present collateral attack upon the finding of paternity. *See Hunt, supra.* We find no abuse of discretion in the trial court's refusal to modify the divorce decree based upon Rule 60(c)(4).

Jeffrey also argues that the trial court erred in preventing him from proving that Diana committed fraud by (1) not permitting him to conduct discovery into Diana's prenatal medical history, and (2) denying his motion for acknowledgment of DNA test results. A trial court ₁₁has broad discretion in matters pertaining to discovery, and the exercise of that discretion will not be reversed absent an abuse of discretion that is prejudicial to the appealing party. *Barre v. Hoffman,* 2009 Ark. 373, 326 S.W.3d 415. Clearly, Jeffrey's discovery requests sought evidence to collaterally attack the issue of paternity. The circuit court concluded there was no need for discovery on matters that had previously been decided. We agree and find no abuse of discretion by the circuit court in denying discovery into matters already adjudicated.

Jeffrey's final contention is that the trial court erred in finding that Ark.Code Ann. § 9–10–115 and other statutes, as applied to him, are constitutional.[2] In essence, he argues that the laws of the state of Arkansas regarding the establishment of paternity for divorced fathers are unconstitutional because they violate both the federal and the state constitutions.[3] The trial court found that Jeffrey was barred from raising this argument because he failed to appeal the denial of the motion for paternity testing and never challenged the constitutionality of the paternity statute. Jeffrey advances that res judicata does not bar this argument because it was only after this court handed down *Martin v. Pierce,* 370 Ark. 53, 257 S.W.3d 82 (2007), that it became clear that divorced fathers could not challenge paternity pursuant to Ark.Code Ann. § 9–10–115.

₁₂Jeffrey ignores a well-settled principle of the res judicata doctrine, preventing the litigation of issues that could have been raised in the first litigation. *See, e.g., Arkansas La. Gas Co. v. Taylor,* 314 Ark. 62, 858 S.W.2d 88 (1993); *Talbot v. Jansen,* 294 Ark. 537, 744 S.W.2d 723 (1988). In the divorce proceeding, Jeffrey never challenged the constitutionality of Ark.Code Ann. § 9–10–115. Also, this case is distinguishable from *Martin* where this court held that Ark.Code Ann. § 9–10–115, as amended in 2001, did not apply to a paternity determination arising as a matter of presumption under a divorce decree. Here, Jeffrey challenged paternity but failed to appeal the denial of his motion for paternity testing. Jeffrey's failure to appeal from the final judgment in the first suit prevents him from raising these issues now. We find no error in the circuit court's decision and affirm.

Affirmed.

---

2. The other statutes referenced by Jeffrey are Ark.Code Ann. §§ 9–10–104, 9–10–108, and 16–43–901. He asserts that these statutes give rights to DNA testing to putative fathers, but not to him.

3. Jeffrey argues that his having to pay child support for a child that he did not sire violates his rights under the Thirteenth and Fourteenth Amendments to the United States Constitution and article 2 of the Arkansas Constitution.