Cite as 2023 Ark. App. 518

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-21-461

| | |
|---|---|
| ARFAY MLK SS, LLC; SSOP, LLC; AND OKCAT, LLC<br><br>APPELLANTS<br><br>V.<br><br>WASH ME HOLDINGS, LLC; SPEEDY SPLASH CAR WASH, LLC; SPEEDY SPLASH CAR WASH ARKANSAS, LLC; TONY FITCH; AND LORI FITCH<br>APPELLEES | Opinion Delivered November 8, 2023<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CV-20-128]<br><br>HONORABLE DOUG MARTIN, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**KENNETH S. HIXSON, Judge**

Appellants ARFAY MLK SS, LLC (ARFAY); SSOP, LLC (SSOP); and OKCAT, LLC (OKCAT), (collectively the McLain LLCs) appeal from three separate orders filed by the Washington County Circuit Court and entered in favor of appellees Wash Me Holdings, LLC (Wash Me); Speedy Splash Car Wash, LLC (Speedy Splash); Speedy Splash Car Wash Arkansas, LLC (Speedy Splash Arkansas) (collectively "the Fitch LLCs"); and Tony Fitch and Lori Fitch (collectively "the Fitches"). On appeal, the McLain LLCs argue that (1) the circuit court erred in granting summary judgment on the complaint because genuine issues of material fact remained; (2) the circuit court erred in dismissing their amended breach-of-contract claim on the basis of res judicata; (3) the circuit court erred in granting summary judgment dismissing their counterclaim and third-party complaint because genuine issues of

material fact remained; (4) the circuit court erred in alternatively dismissing their fraud claim against the Fitches as not having been pled with particularity; and (5) the circuit court abused its discretion in awarding $50,228.03 in attorneys' fees and costs to the Fitch LLCs. We affirm in part and reverse and remand in part for the reasons stated herein.

I. *History of the Parties*

The Fitches owned Speedy Splash Car Wash. Tony Fitch was the manager of Speedy Splash. Sometime prior to 2017, the Fitches desired to develop an express-car-wash chain in the United States.

Scott McLain owned the McLain Group, LLC (the McLain Group). The McLain Group provided business services to customers that included, but was not limited to, business management and administration, land acquisition and development, design, construction, facility management, and consulting. On March 1, 2017, Speedy Splash and the McLain Group entered into an "Exclusive Professional Services Agreement" (the Services Agreement) wherein the McLain Group agreed to provide business services as set forth in exhibit A to the agreement.[1] The fee agreement was set forth in exhibit B to the Services Agreement and generally provided that the McLain Group would receive a 6 percent commission on the completion of any completed project on behalf of the client, Speedy Splash.

---

[1]Of particular interest to this litigation, exhibit A provided that the McLain Group would have the primary responsibility for accounting and accounting requirements, to perform general accounting responsibilities, and to gather and assemble data. Exhibit A further provided that Speedy Splash would assist in these responsibilities.

While the record is unclear, apparently the relationship between the Fitches, Speedy Splash, and the McLain Group was productive. By 2019, there were at least thirteen car washes that were owned by the Fitch LLCs, which had been created and owned by the Fitches. Scott McLain desired to purchase some of those car washes. In late 2018 or early 2019, Scott McLain agreed to purchase twelve car washes owned by the Fitch LLCs. Scott McLain apparently created his own LLC to purchase the twelve car washes, SSOP, LLC. A purchase agreement was entered into between Speedy Splash, Wash Me, and Speedy Splash Arkansas as the "Sellers" and SSOP as the "Buyer."

For reasons undisclosed in the record, the purchase agreement was amended on May 27, 2019. The amended purchase agreement is referred to throughout the record under different names: the amended and restated asset purchase agreement, the APA, and the OK/AR agreement. For purposes of this opinion, the agreement will be referred to as "the APA."

The APA generally provided for the sale and purchase of twelve car washes for the consideration of $13 million. The "Seller" in the APA was defined as Wash Me, Speedy Splash, and Speedy Splash Arkansas (the Fitch LLCs). The "Owner" in the APA was defined as Tony and Lori Fitch (the Fitches). The "Buyer" in the APA was defined as SSOP. Further, the APA provided the following in relevant part:

> Seller and each Owner represent and warrant, jointly and severally, to Buyer as follows:
>
> . . . .

3.2     Financial Statements.  Seller has delivered to Buyer unaudited balance sheets for the periods requested by Buyer . . . and related unaudited statement(s) of income. Such financial statements fairly present the financial condition and the results of operations and cash flows of Seller as of the respective dates thereof and for the periods referred to in such financial statements.  The financial statements were prepared from and are in accordance with the accounting Records of Seller.  Buyer acknowledges that all financial projections received are not historical financial data, but good faith projections of revenue and are accepted "as is, where is."

3.3     Books and Records.  The books of account and other financial Records of Seller, are complete and correct and represent actual, bona fide transactions and have been maintained in accordance with sound business practices.

. . . .

10.2    Non-Hire.  Except in the case of Ryan Pevril, Seller and Owners covenant and agree that for a period of six (6) months from the Closing Date, no Seller or Owner will, and each Seller and Owner will cause each of its Affiliates not to, employ (or attempt to employ or interfere with any employment relationship with) any current employee of the Seller or Owners or any individual employed by Seller or Owners in the one (1) month preceding the Closing date.

    10.2.1 Remedy.  Notwithstanding anything contrary in this Agreement, Seller and Owners agree that in the event of violation by Seller or Owners of paragraph 10.2 of this Agreement, Seller or Owners shall pay Buyer an amount equal to six (6) months of wages for the relevant employee at such employee's rate of compensation on the date of violation.

10.3    Branding.  . . . Seller or Owners will not use the words "Speedy" or "Splash" in any carwash business owned or operated by Seller or Owners. . . .

In connection with the APA and attached as exhibit F to the APA, these same parties entered into a "Right of First Refusal Agreement" (ROFR Agreement) in which the Fitch LLCs granted SSOP the right of first refusal regarding the sale of any other car washes they owned.

Again, for reasons undisclosed in the record, the McLain LLCs and the Fitch LLCs executed a release and settlement agreement (Settlement Agreement) on October 18, 2019,

4

which purported to resolve disputes that arose from the APA.[2] Scott McLain had apparently created additional LLCs to effectuate the purchase of the car washes. In the Settlement Agreement, the Fitch LLCs are collectively referred to as "Fitch," and the McLain LLCs are collectively referred to as "McLain." Notably, the Fitches, individually, Scott McLain, individually, and the McLain Group were not parties to the Settlement Agreement.

The Settlement Agreement generally provided that the McLain LLCs would pay the sum of $2 million to the Fitch LLCs. Section 8(a) of the Settlement Agreement expressly provided that "[t]his Agreement constitutes the *complete understanding* between the parties. No other promises, representations or agreements shall be binding unless signed by these parties." (Emphasis added.) Section 8(b) further provided that "[t]his Agreement cannot be altered, amended, or modified in any respect except by a writing duly executed by all Parties to the Agreement."

Additionally, the Settlement Agreement contained two sections in which portions of the APA were ratified and reaffirmed. Subsection (a) of section 4 of the Settlement Agreement specifically provided the following in relevant part:

> Notwithstanding anything herein to the contrary, Fitch [defined therein as Wash Me, Speedy Splash, and Speedy Splash Arkansas] reaffirms and covenants that its representations, warranties, and covenants set forth in . . . the [APA] were correct and accurate as of the date the said agreements were executed, and that said representations, warranties, and covenants are not released by this Agreement, and said representations, warranties, and covenants are ratified, reaffirmed and incorporated herein by reference.

---

[2]In the Settlement Agreement, the McLain LLCs and the Fitch LLCs also resolved a dispute in another separate agreement that is not relevant to this appeal.

Section 5 of the Settlement Agreement provided the following:

> "Non-Compete. Notwithstanding anything herein to the contrary, the Parties acknowledge and agree that the provisions of Section 10 of the [APA] are not released by this Agreement, and are ratified and reaffirmed and incorporated herein by reference."

Thus, the Settlement Agreement ratified and reaffirmed the representations the Fitch LLCs made regarding the financial records discussed in subsections 3.2 and 3.3 and the provisions regarding not rehiring former employees and refraining from using the "speedy" and "splash" brand contained in subsections 10.2, 10.2.1, and 10.3 of the APA.

In the Settlement Agreement, the McLain LLCs agreed to pay the Fitch LLCs the sum of $2 million. However, the McLain LLCs decided that the Fitch LLCs had breached the Settlement Agreement in two respects. First, the McLain LLCs (owned by Scott McLain) apparently paid the McLain Group, LLC (also owned by Scott McLain) a commission of $100,000 for the closure of the project described in the Settlement Agreement. The McLain LLCs withheld $100,000 from its $2 million payment to the Fitch LLCs to refund itself for payment of the commission. Second, the McLain LLCs determined that the Fitch LLCs or the Fitches violated section 5 of the Settlement Agreement (and section 10.2 of the APA) by hiring two former McLain LLC employees. According to section 10.2 of the APA, the remedy for said breach was an amount equal to six months' wages, which the McLain LLCs determined was $47,000. Therefore, the McLain LLCs also withheld $47,000 from the $2 million. In total, the McLain LLCs withheld $147,000 and remitted $1.853 million to the Fitch LLCs.

## II. *Litigation*

The McLain LLCs' withholding of the $147,000 from the Fitch LLCs was the conception of the present litigation. On January 10, 2020, the Fitch LLCs filed a complaint for breach of contract against the McLain LLCs and prayed for a judgment in the amount of $147,000.

The McLain LLCs filed an answer generally denying the allegations in the complaint. The McLain LLCs also filed a counterclaim against the Fitch LLCs and a third-party complaint against the Fitches, individually. In the counterclaim and third-party complaint, the McLain LLCs collectively, and in vague generalities, alleged causes of action for breach of contract ("Count I") and for fraud ("Count II") against the Fitch LLCs and the Fitches.[3] Regarding Count I, the McLain LLCs recited that the APA prohibited the Fitch LLCs and the Fitches from using the words "Speedy" or "Splash" in any car-wash business owned or operated by them. They alleged that the Fitch LLCs and the Fitches had continued to use the name "Speedy Splash" in car-wash businesses owned by them. Regarding Count II, the McLain LLCs alleged they discovered that the financial statements they had been provided by the Fitch LLCs and the Fitches did not fairly represent the financial condition and the results of operations and cash flows of the companies purchased. As such, they alleged that the Fitch LLCs and the Fitches breached the APA and knowingly made false representations

---

[3]The allegations in the counterclaims and the third-party complaints are confusing because the McLain LLCs sometimes allege same or similar conduct against the Fitch LLCs, sometimes against the Fitches, and sometimes against the Fitch LLCs and the Fitches collectively.

related to the financial condition of the business in the APA and reaffirmed them in the Settlement Agreement. The McLain LLCs alleged that they justifiably relied on the misrepresentations and suffered damages in an amount greater than $75,000.

The Fitches, individually, moved to dismiss the third-party complaint pursuant to Arkansas Rules of Civil Procedure 8 and 9. They argued that the breach-of-contract cause of action alleged in Count I should be dismissed as to them because the McLain LLCs failed to allege specific damages. Regarding the cause of action for fraud in Count II, the Fitches argued that the cause of action should be dismissed as to them individually because the reaffirmed representations, warranties, and covenants in section 4 of the Settlement Agreement applied only to the Fitch LLCs and not to them individually. As such, the Fitches requested that any claims against them individually be dismissed.

Simultaneously, the Fitch LLCs filed a separate motion to dismiss the counterclaim pursuant to Arkansas Rules of Civil Procedure 8 and 9. The Fitch LLCs argued that the McLain LLCs had not alleged any damages arising out of any breach of contract and had failed to sufficiently plead a fraud claim with the particularity required pursuant to Arkansas Rule of Civil Procedure 9.

The McLain LLCs subsequently filed responses to both motions to dismiss, and they amended their counterclaim and third-party complaint. The amended counterclaim and third-party complaint essentially made the same allegations with a few additional facts. In their responses to the motions to dismiss, they argued that both motions to dismiss should be denied. The McLain LLCs explained that their counterclaim and third-party complaint

8

satisfies the requirements to allege a cause of action for breach of contract and for fraud. Regarding their Count II fraud claim against the Fitches, the McLain LLCs acknowledged that the reaffirmed section 3.2 of the APA by section 4 of the Settlement Agreement references the "Seller" and not "Owners." However, the McLain LLCs argued that the contents of section 3 were joint and several representations and warranties of the Seller and each Owner. Therefore, they argued that those specific provisions were also binding as to the Fitches.

The Fitch LLCs and the Fitches collectively filed their answer to the amended counterclaim and third-party complaint wherein they generally denied the allegations and pled all the defenses set forth in Rule 12(b) of the Arkansas Rules of Civil Procedure in addition to the affirmative defenses of estoppel, laches, release, setoff, and waiver.

The Fitch LLCs and the Fitches subsequently filed *a combined* motion for summary judgment on October 9, 2020. Included with their motion, the Fitch LLCs and the Fitches attached a summary of undisputed material facts, responses to interrogatories, affidavits, and copies of the various agreements at issue. In the responses to interrogatories answered by Scott and Cindy McLain on behalf of the McLain LLCs, the McLain LLCs admitted that they did not remit the full $2 million but withheld $147,000.

In the motion for summary judgment, the Fitch LLCs argued that they were entitled to the full $2 million the McLain LLCs agreed to remit in the Settlement Agreement. Regarding the Fitch LLCs' claim for a judgment in the amount of $147,000, the Fitch LLCs argued that McLain LLCs were not entitled to setoff the $100,000 commission that it

9

apparently paid the McLain Group. The Fitch LLCs argued that the McLain Group was not a party to this litigation and was not a party to the Settlement Agreement. Therefore, the McLain LLCs were not entitled to the $100,000 setoff for the commission. Regarding the $47,000 that the McLain LLCs withheld as a setoff for an alleged violation of the covenant not to hire employees, the Fitch LLCs argued that the Fitch LLCs did not hire their previous employees, Parker Stallings and Christian Hightower, and did not violate the agreement. The Fitch LLCs explained that Hightower and Stallings had voluntarily terminated their employment with the McLain LLCs, had started their own business and created their own LLC named Detail Guys, LLC (Detail Guys), and that MEMWYC, LLC (MEMWYC), hired the Detail Guys as independent contractors. The Fitch LLCs attached an affidavit from Hightower and Tony Fitch in support of their arguments.

Regarding the McLain LLCs' allegations that the Fitch LLCs and the Fitches provided inaccurate financial statements that breached the parties' prior contract resulting in fraud, the Fitch LLCs and the Fitches argued that they did not provide balance sheets. Instead, they argued that any profit and loss statements that the Fitch LLCs and the Fitches provided to the McLain LLCs were created, in whole or in part, by the McLain LLCs themselves. In other words, neither the Fitch LLCs nor the Fitches provided false financial statements breaching their agreement. Further, prior to any agreement, the McLain LLCs not only had access to the financial information but also had tax returns. Therefore, the Fitch LLCs and the Fitches argued that there could be no fraud because the McLain LLCs had full knowledge of the financials. Additionally, the Fitch LLCs and the Fitches argued that there could be

no fraud because any financial statements were simply projections, and representations of future events do not state a claim for fraud. As such, the Fitch LLCs and the Fitches argued that the McLain LLCs' claims for fraud should be dismissed.

Alternatively, the Fitches argued that any claims against them individually must be dismissed because any agreement was not binding as to them since the Fitches were not parties to the Settlement Agreement.[4]

The McLain LLCs filed their response to the motion for summary judgment on October 30, 2020. They argued that the Fitch LLCs and the Fitches failed to meet their burden to show entitlement to summary judgment. Regarding the $100,000 setoff for a broker commission fee, the McLain LLCs argued that the $100,000 setoff for the commission fee was appropriate because the McLain Group was a third-party beneficiary *under the APA*. The McLain LLCs argued that because the McLain LLCs apparently paid the commission to the McLain Group, the McLain LLCs were entitled to recoup that $100,000 from the Fitch LLCs and that the setoff was appropriate.

Regarding the $47,000 setoff for an alleged violation of the "non-hire" section of the Settlement Agreement, which was ratified in the APA, the McLain LLCs argued that Tony Fitch owned and operated MEMWYC, the entity that allegedly employed Hightower and

---

[4]The Fitch LLC's and the Fitches also argued that they were entitled to summary judgment on the McLain LLCs' claim for breach of contract premised on the allegation that the Fitch LLCs and the Fitches still used the name "speedy" or "splash" in their businesses. Because the circuit court's subsequent dismissal of this claim is not at issue on appeal, we do not discuss the details of this claim in this opinion.

11

Stallings. In support of that argument, they contended that when Scott McLain delivered a set of keys to a car wash owned by the Fitches on November 9, 2019, Hightower had accepted delivery of the keys. The McLain LLCs attached an affidavit from Scott McLain to their response. Scott McLain attached to his affidavit a photocopy of the receipt signed by Hightower and an apparent screenshot of a webpage that purported to show that Tony Fitch was the registered agent for MEMWYC. Accordingly, the McLain LLCs argued that genuine issues of material fact remained regarding whether the Fitches, the Fitch LLCs, or an affiliate had employed Hightower and Stalling and, therefore, had violated the Settlement Agreement rendering the $47,000 setoff appropriate.

In response to the Fitches' argument concerning the McLain LLCs' claims for fraud, the McLain LLCs similarly argued that there were genuine issues of material fact remaining. They explained that the Fitch LLCs and the Fitches had warranted that the financial statements fairly represented the financial condition regardless of who prepared them. Although the McLain LLCs acknowledged that they did assist in compiling the financial information, they asserted that they "had no knowledge of the source or accuracy of the underlying financial information provided" and relied on the Fitch LLCs and the Fitches for its accuracy.

Scott McLain's affidavit also included averments regarding the alleged fraud claim. Scott McLain stated that he was the representative of the McLain LLCs and the McLain Group. He admitted that SSOP (one of the McLain LLCs) assisted the Fitch LLCs and the Fitches in compiling "historical financial information" into a "standard financial statement."

12

However, Scott McLain stated that the financial statement was then provided to the Fitch LLCs for review, and SSOP had no knowledge of the source or accuracy of the information it was provided. Having said that, Scott McLain then stated that the historical financial information provided by the Fitch LLCs and the Fitches "was inaccurate and *did fairly represent the financial condition, results of operations and cash flows of the* [*Fitch LLCs*] *under the* [*APA*]." (Emphasis added.)

The Fitch LLCs and the Fitches filed a reply to the motion for summary judgment. They reiterated that the affirmative defense of setoff was inappropriate and that the McLain Group was not a party in this case and was not a party to the Settlement Agreement. The Fitch LLCs and the Fitches argued that Hightower's physical presence at the car wash was immaterial because the Fitch LLCs and the Fitches admitted that Hightower's company was hired by MEMWYC to do some independent contract work and repair at the car wash. The Fitch LLCs and the Fitches discussed the statements made in Mr. McLain's affidavit and ultimately concluded that the McLain LLCs failed to meet proof with proof.

The Fitch LLCs and the Fitches further attached another affidavit from Tony Fitch. In his affidavit, Tony Fitch explained that Scott McLain had access to the point-of-sale systems and computer systems of the Fitch LLCs for over six months prior to executing the APA. Tony Fitch said that any historical financial information was provided on a good-faith basis, and the Fitch LLCs and the Fitches had no knowledge as to any perceived inaccuracies.

Tony Fitch disputed that any money was owed to the McLain Group and noted that the McLain Group had not filed any lawsuit to recover any money that it might be owed.

13

Finally, Tony Fitch stated that MEMWYC had contracted with Detail Guys to perform services, which explained why Hightower was physically present at one of the car washes.

A hearing was held via Zoom on December 15, 2020, in which the parties orally argued their respective positions. The motion for summary judgment filed by the Fitch LLCs and the Fitches had two requests. The first request by the Fitch LLCs was for the court to grant it a judgment for breach of contract in the amount of $147,000 against the McLain LLCs. The second request made by the Fitch LLCs and the Fitches was for the court to dismiss the claims of breach of contract in Count I and claims of fraud in Count II set forth in the McLain LLCs amended counterclaim and third-party complaint. At the conclusion of the hearing, the circuit court announced that it was granting summary judgment to the Fitch LLCs on their breach-of-contract claim against the McLain LLCs in the amount of $147,000.

Regarding the request by the Fitch LLCs and the Fitches to grant summary judgment and dismiss the McLain LLCs' allegations of fraud in Count II of their counterclaim and third-party complaint, the circuit court took that request under advisement. During the hearing, the circuit court asked the McLain LLCs whether they had any specific evidence of fraud on the part of the Fitch LLCs or the Fitches. The McLain LLCs complained that they did not have sufficient evidence because the Fitch LLCs and the Fitches failed to answer certain discovery requests and provide the requested documentation. The court was sympathetic to the McLain LLCs' argument and instructed the parties to take "as long as you all would like to work out your discovery issues or responses to discovery," and the court

14

took the request to grant summary judgment by the Fitch LLCs and the Fitches on the fraud counterclaim and third-party complaint by the McLain LLCs under advisement.[5]

Two and half months later, a written order was filed on March 1, 2021. The circuit court collectively referred to Wash Me, Speedy Splash, Speedy Splash Arkansas, and the Fitches as "the Fitch Parties" and ARFAY, SSOP, and OKCAT as "the McLain Parties." Relevant to this appeal, the circuit court made the following findings:

> 3. The Motion for Summary Judgment is granted as to the Fitch Parties' Complaint, and the Fitch Parties are entitled to judgment against the McLain Parties in the amount of $147,000.00.
>
> 4. The Motion for Summary Judgment is granted as to Count I of the McLain Parties' Amended Counterclaim and Third-Party Complaint. *Count I of the Amended Counterclaim and Third-Party Complaint is hereby dismissed with prejudice.*
>
> 5. The Court will take under advisement whether or not to grant summary judgment to the Fitch Parties as to Count II of the Amended Counterclaim and Third-Party Complaint.

### JUDGMENT

> 6. Defendants ARFAY MLK SS LLC, SSOP LLC, and OKCAT LLC shall jointly and severally pay to Wash Me Holdings, LLC, Speedy Splash Car Wash LLC, and Speedy Splash Car Wash Arkansas, LLC the sum of $147,000.00.

(Emphasis added.)

Eventually, the Fitch LLCs and the Fitches filed a letter with the circuit court on April 12, 2021, in which they requested that the circuit court enter an order on the outstanding

---

[5]The McLain LLCs stated that they were no longer contesting their claim that the Fitch LLCs were still using the words "Speedy" or "Splash" in violation of the Settlement Agreement.

fraud claim and dismiss Count II of the amended counterclaim and third-party claim with prejudice. They explained that the McLain LLCs had been provided with the additional discovery information they requested but failed to provide any further proof of their vague claim for fraud.

A hearing was held on May 6, 2021, on the pending motions, and a written order was filed on May 10, 2021, making the following relevant findings:

2. The Amended Fraud Counterclaim is not pled with particularity as required by ARCP 9 and the Arkansas Rules of Civil Procedure regarding pleadings.

3. That there is no date or deadline referenced in the March 1, 2021 Order related to the time the Court would take the Summary Judgment Motion requesting dismissal of the Fraud Counterclaim under advisement.

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED that:

1. Counter-Plaintiff is granted one week, no later than May 13, 2021, to file a second amendment to the Fraud Counterclaim and restate the claim with particularity as required by ARCP 9 and the Arkansas Rules of Civil Procedure regarding pleadings, to avoid dismissal pursuant to ARCP 12(b)(6) for failure to state facts upon which relief can be granted;

. . . . [6]

3. A hearing is set for May 18th at 9:30 am at which time the Court will take up the Motion for Summary Judgment to dismiss the Fraud Counterclaim for failure to provide evidence of the essential elements of the claim;

4. The Court will also take up the remaining pending motions which are ripe and fully briefed at that time;

_____

[6]In the interim, the Fitch LLCs filed several writs of garnishment and execution attempting to collect on the $147,000 judgment. The McLain LLCs objected. The circuit court held that the garnishments were premature, and the writs were quashed.

16

5. Counter-Plaintiffs are granted time to conduct discovery prior to the May 18th hearing, and Counter-Defendants have agreed and will cooperate in providing requested discovery in their possession and control in that timeframe.

Thereafter, on May 13, 2021, the McLain LLCs filed a second amended counterclaim and third-party complaint. In the second amended counterclaim and third-party complaint, the McLain LLCs not only amended their fraud claim but added a new breach-of-contract claim. In Count I, the McLain LLCs alleged that the Fitch LLCs and the Fitches had contractually agreed to give them the right of first refusal before selling any additional car washes to a third party. The McLain LLCs claimed that the Fitch LLCs and the Fitches breached their agreement when they sold two car washes without first giving the McLain LLCs the opportunity to purchase them.

Regarding Count II, the amended fraud claim, the McLain LLCs quoted from several provisions of the APA, including section 3.3 that stated the following: "The books of account and other financial Records of Seller, are complete and correct and represent actual, bona fide transactions and have been maintained in accordance with sound business practices." The McLain LLCs alleged that the Fitch LLCs and the Fitches had "guaranteed the accuracy" of the financial information. The McLain LLCs claimed that the financial statements provided did not fairly represent the financial condition because net sales went down the quarter after the McLain LLCs purchased the car washes. The McLain LLCs also alleged that after speaking with customers, they determined that net sales went down because the Fitch LLCs and the Fitches had been offering monthly car-wash memberships to customers for ten dollars a month, which the McLain LLCs alleged "cannot be considered sound

17

business practices" because the price of just one car wash was ten dollars. The McLain LLCs further alleged that the Fitch LLCs and the Fitches should have subtracted "allowances" for the memberships from gross sales to arrive at a net sales figure but did not do so. Instead, the Fitch LLCs and the Fitches reported that their net sales equaled their gross sales. As such, the McLain LLCs claimed that the Fitch LLCs and the Fitches had knowledge that the actual revenues were overstated, that the Fitch LLCs and the Fitches did not inform the McLain LLCs of their "unsound terms," that the McLain LLCs used and relied on the information, that the Fitch LLCs and the Fitches knew of the McLain LLCs' reliance, and that as a result, the McLain LLCs were damaged by the difference of the amount they paid for the car washes from what they would have paid had they had accurate financial information. The McLain LLCs attached copies of the agreements and emails with the financial statements provided as exhibits.

Thereafter, the circuit court sent a notice that a one-hour hearing was set "on the Motion for Summary Judgment to dismiss the Fraud Counterclaim for failure to provide evidence of the essential elements of the claim" for May 24, 2021. In the intervening week between the filing of the second amended counterclaim and third-party complaint and the hearing, neither the Fitches nor the Fitch LLCs had filed an answer or other response to the new and more detailed allegations set forth in the second amended counterclaim or third-party complaint. Nor did the Fitches or the Fitch LLCs file an amended motion for summary judgment discussing the new and more detailed allegations. Similarly, the McLain LLCs did

18

not file an amendment to their responses to the motions for summary judgment during that week setting forth the new allegations and evidence of alleged fraud.

At the hearing, the Fitch LLCs and the Fitches argued that the McLain LLCs' second amended new breach-of-contract claim for alleged violation of the ROFR Agreement was barred by res judicata because the circuit court had already dismissed the Count I breach-of-contract claim with prejudice and argued that the claim could not be revived simply by alleging additional facts to support a different breach-of-contract claim. They argued that the breach-of-contract claim had been fully litigated to the point that it had been dismissed with prejudice. Therefore, to the extent there were new legal issues, they alleged that it was "too late" to raise them.

Regarding the second amended fraud claim, the Fitch LLCs and the Fitches argued that the McLain LLCs had access to all their financial information and that the McLain LLCs either were, or should have been, aware of the monthly memberships since even the APA referenced the existence of the monthly memberships. The Fitch LLCs and the Fitches essentially argued that the McLain LLCs had failed to prove that the Fitch LLCs and the Fitches made a false statement. They argued that simply because the McLain LLCs' net sales went down after the purchase did not prove fraud. The Fitch LLCs and the Fitches further argued that the McLain LLCs did not set out their damages with particularity in their second amended counterclaim and third-party complaint. As such, the Fitch LLCs and the Fitches argued that the second amended claim for fraud should be dismissed both because the McLain LLCs failed to plead facts that supported such a claim and because the Fitch LLCs

and the Fitches were entitled to summary judgment since the McLain LLCs failed to meet proof with proof.

The McLain LLCs responded and argued regarding the Count II fraud claim that although the car counts might be accurate in the financial records, a buyer was "getting an unfair picture of what this car wash is producing" due to the monthly memberships. They argued that they were alleging that the net sales were inaccurate. The McLain LLCs argued that the Fitch LLCs and the Fitches should have used "allowances" in calculating their numbers for the memberships. The McLain LLCs generally argued that the charts and exhibits set forth in the second amended counterclaim and third-party complaint supported their positions.

Regarding the Count I newly amended breach-of-contract claim, the McLain LLCs argued that res judicata should not apply because the breach-of-contract claim was not the same as in the original pleading. They argued that because the new allegations were in the same case, the Arkansas Rules of Civil Procedure allowed them to file an amended complaint but did acknowledge that the circuit court could strike an amendment if it had already ruled on the issue. However, the McLain LLCs argued that this was a new breach-of-contract claim that had "nothing to do with the count and the facts that this Court ruled upon previously." As such, the McLain LLCs claimed that they had the right to amend Count I of their complaint.

After the parties concluded their oral arguments at the hearing, the circuit court announced that it was granting the motion for summary judgment and discussed the fact

that there were also pending motions to dismiss the fraud claim. At that point, the McLain LLCs raised the issue that there had not been any new written motions for summary judgment or motions to dismiss on the recently filed second amended counterclaim and third-party complaint. As such, the McLain LLCs asked the circuit court to require new motions to be filed and for the McLain LLCs to be given an opportunity to meet proof with proof. The Fitch LLCs and the Fitches disagreed and argued that the McLain LLCs were attempting to put form over substance. The Fitch LLCs and the Fitches argued that the notice of hearing set out the matters to be addressed, and the McLain LLCs failed to offer any additional evidence to support their claim. The circuit court agreed and noted that it had given the McLain LLCs "multiple opportunities to meet proof with proof, . . . and this amended complaint fails on both counts." As such, the circuit court stated that it was granting the motion for summary judgment and motions to dismiss.

The circuit court filed its written order on June 1, 2021, and it made the following relevant findings:

> 2. This Court previously heard Plaintiff's Motion for Summary Judgment on December 15, 2020 resulting in an Order and Judgment filed of record on March 1, 2021 ("March 1 Order"). The March 1 Order took Count II of Defendants' Amended Counterclaim and Third-Party Complaint, alleging fraud, under advisement to allow Defendants to amend their complaint and/or conduct discovery to produce evidence in support of the claim.

> 3. The Defendants filed their Second Amended Complaint and Third-Party Complaint on May 13, 2021, *which included additional evidence not previously before the Court.*

> 4. *Having considered the pleadings and evidence provided*, for the reasons stated here and from the bench, the Court finds Plaintiffs' Motion for Summary Judgment,

filed October 9, 2020, established a prima facie case of entitlement to summary judgment on Defendants' fraud claim. The McLain Parties have failed to meet proof with proof that there is a genuine issue of material fact to be litigated in this case. Therefore, Plaintiff's Motion for Summary Judgment is GRANTED as to Count II of the McLain Parties' Second Amended Counterclaim and Third-Party Complaint. Count II of the Second Amended Counterclaim and Third-Party Complaint is hereby dismissed with prejudice.

5. Count II of the McLain Parties' Amended Counterclaim and Third-Party Complaint was not pleaded with sufficient particularity required by Rule 9 of the Arkansas Rules of Civil Procedure. The McLain Parties Second Amended Counterclaim and Third-Party Complaint failed to cure the deficiencies in pleading facts supporting the elements of the claim, specifically regarding facts supporting the false statements allegedly made by the Fitch Parties. Therefore, Third-Party Defendants Tony and Lori Fitch's Motion to Dismiss is GRANTED.

6. Further, while the McLain Parties included in their Second Amended Counterclaim new facts supporting a breach of contract claim, the Plaintiffs argued, and the Court finds, the breach of contract claim in Count I is barred by res judicata. The March 1 Order dismissed with prejudice Count I of the McLain Parties' Counterclaim, which was for breach of contract. A new factual issue alleging breach of the same contract between the same parties is barred by res judicata. Daily, et al. v Lanham et al., 2017 Ark. App. 310. Therefore, Plaintiffs' Motion to Dismiss is GRANTED.

7. Defendants' Motion to Modify Order is GRANTED. This Court's March 1 Order is hereby modified with respect to amount of pre- and post judgement awarded. Paragraph 7 of the March 1 Order is modified to the extent that post-judgment interest shall accrue at the rate of 2.25% per annum. Paragraph 8 is modified to the extent that pre-judgment interest shall accrue at a rate of 2.25% per annum. Any terms not specifically modified herein, contained in the March 1, 2021 Order and Judgment remain in full force and effect.

8. The Fitch Parties may amend their Motion for Attorney's Fees to include updated attorneys' fee information. The McLain Parties may respond with their objections in accordance with the Arkansas Rules of Civil Procedure.

The Fitch LLCs and the Fitches subsequently filed an amended motion for attorneys'

fees and costs on June 10, 2021, requesting a total of $50,228.03 in fees and costs. The

McLain LLCs objected. The circuit court granted the Fitch LLCs and the Fitches a total of $50,228.03 in attorneys' fees and costs on June 29, 2021.[7]

This appeal followed, and the McLain LLCs abandoned any pending but unresolved claims in their notice of appeal.

### III. *Standard of Review*

Our summary-judgment standard is well settled. Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Greenlee v. J.B. Hunt Transp. Servs.*, 2009 Ark. 506, 342 S.W.3d 274. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 371 Ark. 567, 268 S.W.3d 890 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Greenlee*, *supra*. However, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence. *Moses v. Bridgeman*, 355 Ark. 460, 139 S.W.3d 503 (2003). On appellate review, this court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Greenlee*, *supra*. We view the evidence in the light most favorable to the

---

[7]A detailed discussion of this motion, responses, and order is unnecessary due to the ultimate disposition of this matter.

party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id.* However, when there is no material dispute as to the facts, we determine on review whether "reasonable minds" could draw "reasonable" inconsistent hypotheses to render summary judgment inappropriate. *Town of Lead Hill v. Ozark Mountain Reg'l Pub. Water Auth.*, 2015 Ark. 360, 472 S.W.3d 118. In other words, when the facts are not at issue but possible inferences therefrom are, the court will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds might differ on those hypotheses. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). As to issues of law presented, our review is de novo. *State v. Cassell*, 2013 Ark. 221, 427 S.W.3d 663.

IV. *The Complaint and Setoff*

On appeal, the McLain LLCs argue that the circuit court erred in granting summary judgment on the Fitch LLCs' complaint because genuine issues of material fact remained. More specifically, the McLain LLCs first argue that there were genuine issues of material fact as to whether they were entitled to claim $147,000 as a setoff.

A. The $100,000 Commission Setoff

In their brief, the McLain LLCs argue the following:

The only dispute was whether or not [the McLain LLCs] were entitled to withhold $147,000.00 from the sum due under the Settlement Agreement as a setoff consisting of (i) a $100,000.00 broker's fee alleged by [the McLain LLCs] to have been paid by [the McLain LLCs] to The McLain Group, LLC . . . on [the Fitch LLC's] behalf[.] . . . As to the $100,000 setoff, pursuant to *Section 3.14 of the Purchase Agreement*, [the

24

Fitch LLC's] agreed to pay the McLain Group a success fee equal to 5% of the purchase price under the *Purchase Agreement*. . . . Whether or not the McLain Group was a third party beneficiary of the *Purchase Agreement* is irrelevant as the pleadings show that a fact dispute existed as to whether [the McLain LLCs] had already paid the McLain Group on behalf of [the Fitch LLCs] and thus was entitled to claim the fee as a setoff in their own right. . . . Because a genuine issue of material fact existed as to whether the debt which [the McLain LLCs] setoff was owed by [the Fitch LLCs] to the McLain Group or by [the Fitch LLCs] to [the McLain LLCs], the trial court erred in granting summary judgment[.]

(Emphasis added.) This argument lacks merit and is easily disposed of.

The parties entered into the APA. A dispute arose between the parties, and the parties settled their disagreement and entered into the Settlement Agreement. Section 8 of the Settlement Agreement specifically provides the following: "Entire Agreement. (a) This Agreement constitutes the complete understanding between the parties. No other promises, representations or agreements shall be binding unless signed by these parties." Although the parties to the Settlement Agreement did ratify and reaffirm other provisions, it did not ratify or reaffirm section 3.14[8] of the APA. In other words, neither the Fitch LLCs nor the Fitches agreed in writing to pay a broker's commission pursuant to section 3.14 of the APA in the Settlement Agreement; therefore, the circuit court's decision on the $100,000 broker's commission is affirmed.

B. The $47,000 Setoff for Hiring Previous Employees

---

[8]Section 3.14 of the APA stated that "Seller [defined for this provision as SSOP and the Fitches] shall pay to The McLain Group, LLC at closing, a success fee equal to 5% of that portion of the Purchase Price as it is advanced in accordance with paragraph 2.5."

25

The McLain LLCs additionally argue that they were entitled to withhold $47,000 from the $2 million purchase price as a setoff because they alleged the Fitch LLCs and the Fitches had breached section 5 of the Settlement Agreement (and thereby section 10.2 of the APA) by hiring Stallings and Hightower. We disagree.

Recall, section 5 of the Settlement Agreement provided the following: "Non-Compete. Notwithstanding anything herein to the contrary, the Parties acknowledge and agree that the provisions of Section 10 of the [APA] are not released by this Agreement, and are ratified and reaffirmed and incorporated herein by reference." Section 10.2 of the APA provided the following in pertinent part: "[the Fitch LLCs and the Fitches] covenant and agree" for six months not to employ "any current employee of [the Fitch LLCs and the Fitches] or any individual employed by [the Fitch LLCs and the Fitches] in the one (1) month preceding the Closing date."

The record is clear that the Fitch LLCs employed Hightower and Stallings within the one-month period prior to closing. Hence, Hightower and Stallings would be subject to section 10.2. The record further indicates that Hightower and Stallings worked for SSOP (a McLain LLC) from June 1, 2019, until August 2019. In support of their motion for summary judgment, the Fitch LLCs and the Fitches attached the affidavit of Christian Hightower. In his affidavit, Hightower stated that in August 2019, he and Stallings voluntarily quit SSOP and "began car detailing and other jobs." Then, in October 2019, Hightower and Stallings created a new business under the name of Detail Guys, LLC, and began to offer their services to the public as available for hire. In November 2019, Detail Guys was hired as an

independent contractor by MEMWYC for miscellaneous jobs around the car washes in Tulsa, Oklahoma. A copy of a tax form 1099-MISC issued by MEMWYC to Detail Guys was also attached. It showed that MEMWYC paid Detail Guys $3,200 in "Nonemployee compensation."

In response to their motion, the McLain LLCs submitted an affidavit by Scott McLain. Scott McLain stated on November 9, 2019, he went to a car wash owned by the Fitches in Catoosa, Oklahoma to drop off keys; Hightower was present on the premises; and Scott McLain delivered the keys to Hightower. Hightower signed a receipt that provides the following: "Returned Keys to Carwash Admiral 193rd and East Avenue. 11-8-19. 3 keys. /s/ Christian Hightower." Additionally, the McLain LLCs also attached an unsworn apparent screenshot of a webpage from "Visit.OK.gov." The screen shot purportedly provides that Tony Fitch was the registered agent for MEMWYC, LLC.

In reply, the Fitch LLCs and the Fitches provided another affidavit from Tony Fitch. In this affidavit, Tony Fitch stated that MEMWYC had hired Detail Guys to perform services, which explained why Hightower was physically present at one of the car washes.

On appeal, the Fitch LLCs and the Fitches argue that the McLain LLCs simply failed to meet proof with proof, and we agree. There is no evidence that the Fitch LLCs employed Hightower or Stallings during the six-month period after closing. The McLain LLCs explain on appeal that they offered an unsworn printout that shows Tony Fitch listed as a registered

27

agent for MEMWYC[9] and argue that this printout was sufficient to "create a genuine issue of material fact as to whether MEMWYC, LLC was an affiliate." We disagree. This document alone does not prove that MEMWYC was owned or is an "affiliate" of the Fitch LLCs and the Fitches. Additionally, the McLain LLCs explain that they offered Scott McLain's affidavit as proof of the Fitch LLCs and the Fitches' breach of contract. Scott McLain stated that Hightower was physically present at one of the car washes and accepted some keys. However, the Fitch LLCs and the Fitches offered affidavits that did not dispute Hightower's presence. Instead, Hightower explained that he and Stallings voluntarily left their employment with the McLain LLCs and established their own business, Detail Guys, and that their new company was hired as an independent contractor by MEMWYC to provide services for the car wash. Additionally, Hightower included the 1099 issued to Detail Guys for $3,200 from MEMWYC. As such, the McLain LLCs simply failed to meet proof with proof that the Fitch LLCs and the Fitches breached the Settlement Agreement by employing Stallings and Hightower or that they were entitled to a setoff, and we affirm.

V. The *Second Amended Counterclaim and Third-Party Complaint*

In their next three points on appeal, the McLain LLCs generally argue that the circuit court erred in dismissing their second amended counterclaim and third-party complaint.

_____

[9]We note that the Fitch LLCs and the Fitches argue for the first time on appeal that the printout should not have been considered in the summary-judgment analysis pursuant to our opinion in *American Gamebird Research Education and Development Foundation, Inc. v. Burton*, 2017 Ark. App. 297, 521 S.W.3d 176; however, because appellants' reliance on this document is immaterial to our disposition of this point, we make no further comment on its consideration since it was not argued below.

28

More specifically they argue that the circuit court erred in granting the Fitch LLCs and the Fitches' oral motion to dismiss their second amended breach-of-contract claim on the basis of res judicata; the circuit court erred in granting the Fitch LLCs and the Fitches' motion for summary judgment and dismissing their second amended fraud claim as genuine issues of material fact remained; and the circuit court erred in alternatively granting the Fitches' motion to dismiss their second amended fraud claim against Tony and Lori Fitch as not having been pled with particularity. We address and resolve these points together.

Recall, the McLain LLCs filed their second amended counterclaim and third-party complaint on May 13, 2021, and eleven days later, on May 24, 2021, the court held a hearing. At the conclusion of the hearing, the circuit court granted the Fitch LLCs and the Fitches' oral motion to dismiss the McLain LLCs' second amended breach-of-contract claim on the basis of res judicata; granted the Fitch LLCs and the Fitches' motion for summary judgment and dismissed the McLain LLCs' second amended fraud claim because no genuine issues of material fact remained; and, alternatively, granted the Fitches' motion to dismiss the McLain LLCs' second fraud claim against Tony and Lori Fitch as not having been pled with particularity. The circuit court filed its written order on June 1, 2021, and it made the following relevant findings:

> 2. This Court previously heard Plaintiff's Motion for Summary Judgment on December 15, 2020 resulting in an Order and Judgment filed of record on March 1, 2021 ("March 1 Order"). The March 1 Order took Count II of Defendants' Amended Counterclaim and Third-Party Complaint, alleging fraud, under advisement to allow Defendants to amend their complaint and/or conduct discovery to produce evidence in support of the claim.

29

3.      The Defendants filed their Second Amended Complaint and Third-Party Complaint on May 13, 2021, *which included additional evidence not previously before the Court.*

4.      *Having considered the pleadings and evidence provided*, for the reasons stated here and from the bench, the Court finds Plaintiffs' Motion for Summary Judgment, filed October 9, 2020, established a prima facie case of entitlement to summary judgment on Defendants' fraud claim. The McLain Parties have failed to meet proof with proof that there is a genuine issue of material fact to be litigated in this case. Therefore, Plaintiff's Motion for Summary Judgment is GRANTED as to Count II of the McLain Parties' Second Amended Counterclaim and Third-Party Complaint. Count II of the Second Amended Counterclaim and Third-Party Complaint is hereby dismissed with prejudice.

5.      Count II of the McLain Parties' Amended Counterclaim and Third-Party Complaint was not pleaded with sufficient particularity required by Rule 9 of the Arkansas Rules of Civil Procedure. The McLain Parties Second Amended Counterclaim and Third-Party Complaint failed to cure the deficiencies in pleading facts supporting the elements of the claim, specifically regarding facts supporting the false statements allegedly made by the Fitch Parties. Therefore, Third-Party Defendants Tony and Lori Fitch's Motion to Dismiss is GRANTED.

6.      Further, while the McLain Parties included in their Second Amended Counterclaim new facts supporting a breach of contract claim, the Plaintiffs argued, and the Court finds, the breach of contract claim in Count I is barred by res judicata. The March 1 Order dismissed with prejudice Count I of the McLain Parties' Counterclaim, which was for breach of contract. A new factual issue alleging breach of the same contract between the same parties is barred by res judicata.[10]  Daily, et

---

[10]Because this case is remanded, we take this opportunity to address the circuit court's ruling on the application of res judicata. The circuit court erred in dismissing Count I of the second amended counterclaim and third-party complaint on the basis of res judicata. In *Northeast Arkansas Internal Medicine Clinic, P.A. v. Casey*, 76 Ark. App. 25, 31–32, 61 S.W.3d 850, 855 (2001), we held the following:

The trial court held that its interlocutory ruling granting summary judgment precluded appellant from asserting other claims during the pendency of the same lawsuit. We hold that under these circumstances the doctrine of res judicata does not apply. Only a final judgment on the merits may be given a preclusive effect. *See Looney v. Looney*, 336 Ark. 542, 986 S.W.2d 858 (1999) (holding that the application of res judicata to further proceedings in the same lawsuit appears inappropriate). The

30

al. v Lanham et al., 2017 Ark. App. 310. Therefore, Plaintiffs' Motion to Dismiss is GRANTED.

(Emphasis added.)

While we acknowledge that a circuit court has the authority to control its docket, the accelerated schedule ordered by the circuit court on May 10, 2021, created substantive and procedural issues that resulted in prejudice to the McLain LLCs. Again, one must recall the series of events that led to the accelerated hearing.

The Fitches individually filed a motion to dismiss on March 10, 2020, in which they argued that the McLain LLCs failed to plead their counterclaim and third-party complaint with sufficient particularity as required by Rule 9 of the Arkansas Rules of Civil Procedure. The Fitch LLCs and the Fitches further filed companion motions for summary judgment on October 9, 2020. The Fitch LLCs requested a judgment in the amount of $147,000 on their complaint against the McLain LLCs. And the Fitch LLCs and the Fitches, individually, requested summary judgment on the McLain LLCs' counterclaim and third-party complaint alleging breach of contract and fraud. The McLain LLCs opposed the motions.

The hearing on the motion for summary judgment was held on December 15, 2020.[11] At the conclusion of the hearing, the court granted the Fitch LLCs a judgment in the amount

---

summary judgment granted by the trial court was not a final judgment and could even have been reconsidered had the court so desired. *See Stewart Title Guar. Co. v. Cassill*, 41 Ark. App. 22, 847 S.W.2d 465 (1993). It follows that the dismissal of appellant's second amended complaint was error.

[11]The pending motion to dismiss relevant to this appeal was not discussed at the hearing.

of $147,000 on their complaint for damages against the McLain LLCs. The court then addressed the request to grant summary judgment on the counterclaim and third-party complaint filed by the McLain LLCs. The court granted summary judgment to the Fitch LLCs and the Fitches on Count I of the counterclaim and third-party complaint for breach of contract. However, regarding Count II of the counterclaim and third-party complaint, the McLain LLCs complained that the Fitch LLCs and the Fitches failed to respond to certain discovery requests and that they believed the responses would produce evidence of fraud. The court was sympathetic to the McLain LLCs argument and stated the following: "I prefer not to grant summary judgment if a party hasn't had a chance to complete discovery or received responses to the discovery request, if that can affect it." Accordingly, the court held the motion for summary judgment on the fraud count under advisement and gave the parties an unspecified time to complete discovery. Specifically, the court stated, "I will take it under advisement and give you – as long as you all would like to work out your discovery issues or responses to discovery, wherever you're at and whatever we want to refer to it as." The circuit court further stated, "Just to make our record triply clear, number one, if I come up with any deadlines and, number two, actually giving [the McLain LLCs] a chance to review some discovery responses that will hopefully be provided or at least answered by [the Fitch LLCs]. Then if it's necessary, we will come back and address that [fraud] issue once you all have had the opportunity to take a look at that discovery."

The record indicates that the parties proceeded with discovery. For some reason, the order emanating from the December 15, 2020, summary-judgment hearing was not filed

until some three months later on March 1, 2021. The order provided the following in pertinent part: "The Court will take under advisement whether or not to grant summary judgment to the Fitch Parties as to Count II of the Amended Counterclaim and Third-Party Complaint."

It appears from the record that the attorneys contacted the court for another order because the previous order did not contain any deadlines for completing discovery or filing amendments to the counterclaim or third-party complaint. To that end, another order was filed on May 10, 2021, wherein the circuit court stated the following in pertinent part:

> 3. That there is no date or deadline referenced in the March 1, 2021 Order related to the time the Court would take the Summary Judgment Motion requesting dismissal of the Fraud Counterclaim under advisement.
>
> . . . .
>
> IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED that:
>
> 1. [The McClain LLCs are] granted one week, no later than May 13, 2021, to file a second amendment to the Fraud Counterclaim and restate the claim with particularity as required by ARCP 9 and the Arkansas Rules of Civil Procedure regarding pleadings, to avoid dismissal pursuant to ARCP 12(b)(6) for failure to state facts upon which relief can be granted;
>
> . . . .
>
> 3. A hearing is set for May 18th at 9:30 am at which time the Court will take up the Motion for Summary Judgment to dismiss the Fraud Counterclaim for failure to provide evidence of the essential elements of the claim;
>
> 4. The Court will also take up the remaining pending motions which are ripe and fully briefed at that time[.]

33

In other words, by its order, the circuit court only gave the McLain LLCs one week to file a second amended counterclaim and third-party complaint and an additional five days to attend a hearing on the previous pending motion for summary judgment that was filed back on October 20, 2020, and any other pending motions. The McLain LLCs timely filed its amended pleading on the last day, May 13, 2021. The second amended counterclaim and third-party complaint contained new allegations for breach of contract in Count I and new allegations and supporting documentation of fraud in Count II.

The circuit court thereafter filed a notice on May 18, 2021, that the hearing "scheduled on the *Motion for Summary Judgment to dismiss the fraud counterclaim for failure to provide evidence of the essential elements of the claim*" had been reset for May 24, 2021. By ordering a hearing on the pending motion for summary judgment filed on October 20, 2020, only eleven days after the filing of the second amended counterclaim and third-party complaint, the court effectively abbreviated the procedure for summary-judgment motions. The Fitch LLCs and the Fitches did not have the opportunity to file an answer or other responsive pleading to the new allegations and new evidence. In turn, the McLain LLCs did not have the opportunity to reply to any new arguments (such as res judicata) that the Fitch LLCs or the Fitches may have raised. Similarly, the Fitch LLCs and the Fitches did not have the opportunity to file an amended motion for summary judgment or amended motion to dismiss addressing the new evidence and new allegations contained therein and supply the court with an amended statement of uncontested material facts. And it follows that the McLain LLCs did not have the opportunity to address any new arguments (such as res

judicata) in an amended response. Instead, the circuit court ruled on a motion for summary judgment that was filed seven months before the final amended pleadings, a motion to dismiss that was filed twelve months before the final amended pleadings, and an oral motion to dismiss made at the hearing without any notice. Moreover, the previously filed motion for summary judgment and motions to dismiss did not address some of the issues created or evidence presented in the new amended pleading.

A sampling of the colloquy between the court and the attorneys at the final hearing provide context on this issue:

[APPELLANTS' ATTORNEY]: [T]he court is getting ready to -- or may have already granted the motion for summary judgment and dismissing my second amended counterclaim and third-party complaint. But there's been no formal written motion to dismiss this counterclaim -- second amended counterclaim and third-party complaint.

There's been no opportunity for me to respond to the motion. There's been no statement or uncontested trail [sic] of facts submitted by the defense that I can respond to and say these are material. I do dispute this. No reply brief. This is just so odd to me that I file an amended complaint, and . . . within a week, I'm already at summary judgment without a motion or without a list of statement of uncontested material facts.

I think if the judge wants to consider summary judgment on the second amended complaint, the Court should require the defendant to file a motion for summary judgment as to this amended complaint with the -- the material statement of uncontested facts. Allow me to challenge that, meet proof with proof, and defend

it. I'm at a hindrance defending it without those written pleadings in place and without a statement of uncontested material fact for me to respond to.

. . . .

[APPELLEES' ATTORNEY]: . . . Now, if we're going to talk about the pleadings and what the Court should rely on, there was no supplemental response to the motion for summary judgment [filed by the McLain LLCs]. There was no additional evidence offered in response to the motion for summary judgment. So if the Court wants to just rely on the procedural aspect of the pleading, it can say, ["]there wasn't anything provided here. I'm granting the motion for summary judgment.["] . . .

. . . .

[APPELLANTS' ATTORNEY]: . . . But it's my understanding the Court was getting ready to or had granted motion for summary judgment on an amended complaint that was filed a week ago.

THE COURT: But that's because you begged me for time twice.

[APPELLANTS' ATTORNEY]: I did, Your Honor, because there was no deadline for us to file amended complaints.

[The Court acknowledged that the first order was deficient.]

. . . .

[APPELLANTS' ATTORNEY]: I've had no chance for me to offer ‑‑ meet proof with proof as to that motion.

THE COURT: Well, I'm just going to disagree with you there, [counsel]. We ‑‑ I feel like that's exactly what we've done. What I've done is to give you an

36

opportunity - - multiple opportunities to meet proof with proof, and I feel like this amended complaint fails on both counts.

And, I'm going to grant the motion for summary judgment. I'm going to grant the motion to dismiss. . . . Are there any other issues that I have not ruled on yet or failed to address?

[APPELLANTS' ATTORNEY]: No other issues, Your Honor. I'd just like - - if the record's going to reflect that I did not come prepared with cases on res judicata, which is a fair statement, I would just like the record to reflect that I was unaware that we'd be arguing res judicata because I filed an amended complaint. No motion was filed to dismiss that based on res judicata, and it was brought up for the first time today. . . .

It is clear from a review of the amended pleadings and the transcript from the hearing on May 24, 2021, that new issues and new evidence were raised in the second amended counterclaim and third-party complaint that were not addressed in the previously filed motions. The Fitch LLCs and the Fitches did not file an answer to the second amended counterclaim and the amended third-party complaint prior to the hearing. The Fitch LLCs and the Fitches have neither admitted nor denied the new allegations nor responded to the new evidence. Similarly, the Fitch LLCs and the Fitches have neither filed a new or amended their statement of uncontested material facts nor made new arguments. We also note that the Fitch LLCs and the Fitches raised a new affirmative defense at the hearing in the form of res judicata, which the attorney for the McLain LLCs candidly admitted he was not prepared to defend.

When taken as a whole, it is apparent from the record that this matter was not in the appropriate posture for disposition. Perhaps, we blame it on COVID-19 and the steadfast attempts to maintain the court's docket in the midst of the pandemic. Regardless, the abbreviated schedule deprived the McLain LLCs of their ability to meet proof with proof and defend against the motions. The second amended counterclaim and third-party complaint contained new and relevant allegations and evidence that required a timely response. Therefore, we reverse the dismissal of the second amended counterclaim and third-party complaint and remand this matter to the circuit court for proceedings consistent with this opinion.

## VI. *Attorneys' Fees*

Finally, the McLain LLCs argue that the circuit court abused its discretion in awarding $50,228.03 in attorneys' fees and costs to The Fitch LLCs. Because we reverse and remand the circuit court's dismissal of the McLain LLCs' second amended breach-of-contract and fraud claims, we also reverse and remand the issue of attorneys' fees and costs.

## VII. *Conclusion*

In conclusion, we affirm in part and reverse and remand in part. We affirm the circuit court's grant of summary judgment on the Fitch LLCs' complaint and the judgment in the amount of $147,000 against the McLain LLCs. However, we reverse and remand the dismissal of the McLain LLCs' second amended breach-of-contract and fraud claims and the award of attorneys' fees for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

38

HARRISON, C.J., and GRUBER, J., agree.

*The Jiles Firm, P.A.*, by: *Gary D. Jiles* and *Matthew K. Brown*, for appellants.

*Clark Law Firm PLLC*, by: *Suzanne G. Clark* and *Payton C. Bentley*, for appellees.